1843.

Pond
v.
Bergh.

## POND and others *vs.* BERGH and others.

Where, by a will made and published subsequent to the revised statutes, the testator devised all his real estate in the county of Schoharie, in general terms, to his four sons, subject to the payment of certain legacies to his other children; *Held,* that no real estate in that county except such as the testator owned at the time of making his will, or in which he then had some right or interest, passed to the devisees; and that property which he afterwards acquired by devise or descent, and of which he was seized in that county at the time of his death, did not pass under that clause of the will.

Under the provisions of the revised statutes, a general devise by the testator, of all his real estate of a particular description of which he shall die possessed, or which shall belong to him in a particular town or place, at the time of his death, will have the effect to pass to the devisee property which answers the description in the will, although acquired by the the testator subsequent to the making of such will. But a devise of all the testator's real estate in a particular town or district of country, without any thing to indicate an intention to pass after acquired property which he may have in that particular town or district at the time of his death, the legal presumption is that the devise was only intended to relate to the real property the testator had there at the time of the making of his will.

By the eighth, ninth and tenth sections of the chapter of the revised statutes relative to the descent of real property, the descent to collateral relatives of the decedent is placed upon the same footing as the descent to lineal heirs : That is, if all the heirs are in the same degree of consanguinity to the intestate, they take equally, however remote they may be from him; but if some of the class of relatives nearest to the decedent are dead and leave issue, the survivors of the class take equally among themselves, and the representatives of those who are dead take the share which their ancestors of that class would be entitled to if living.

Where a testator died in 1789, leaving two sons and five daughters surviving him, and by his will devised certain lands to his son P. and his heirs and certain other lands to his sons P. and A. and their heirs; and then directed that if one of his sons should die without issue, or if both should die without issue, his or their share or portion of the lands thus devised should go to the *reviving* son and his five sisters, their respective heirs and assigns, each an equal portion thereof forever ; and if both sons should die without issue, such shares or portions should go to their said five sisters, their heirs and assigns forever, in equal portions ; and P. died in 1839 without issue, having survived his brother A. and his five sisters, all of whom had issue living at the death of P.; *Held,* that the word *reviving* must be understood to mean *surviving,* so as to limit the devise over, upon a failure of issue of P. at the time of his death, and not upon an indefinite failure; that P. did not take an estate tail, but a determinable fee in the lands devised to him, and the limitation over upon his death without issue was therefore valid.

*Held also* that the issue of A. were entitled to one-sixth of the lands of P., under such limitation, notwithstanding A. died in the lifetime of his brother; and that the contingent interests of A. and his five sisters under this executory devise, were descendible to their heirs, and were capable of being devised by them in the lifetime of P. their brother.

And one of the sisters having died after the death of the father, during the lifetime of her brother P., and having devised to three of her children, all the land or real estate and all the money or personal estate which she was to get out of her father's estate, which her father devised and bequeathed to her in and by his will ; *Held*, that her contingent interest, or estate, in the lands devised to her brother P. by the will of her father, passed to her devisees under her will.

When the intention of the testator is apparent upon the whole will taken together, the court must give such a construction as will support such intent of the testator, even against strict grammatical rules. And to effectuate his evident intention, words and limitations may be transposed, supplied, or rejected.

A possibility coupled with an interest is devisable, where the person in whom the interest is to vest in the event contemplated, is known or is capable of being ascertained. As to such interests devisable and descendible are convertible terms ; and no particular form of words is necessary in a will to embrace contingent interests in real estate.

A general devise, of all the testator's real estate, will carry his real property of every description, and every estate or interest which he has therein, either in possession, reversion or remainder, and whether the same is absolute or contingent ; unless such general devise is restrained by other words in the will.

Under the revised statutes every estate or interest of the testator which is descendible to his heirs, may be devised by his will.

The husband is not entitled to an estate by the curtesy in a contingent interest of his wife, in real property, where the wife was not seized of an estate or interest in possession in such property during her life ; but her whole interest therein will descend to her heirs.

Where the testator who had a contingent interest in remainder, under an executory devise, in the lands in which his brother had a determinable freehold estate, devised the same to his sons, by the description of " all my right, title and interest to the real estate which may fall to me from the estate of my brother ;" *Held*, that the testator's contingent interest in such lands was sufficiently described in the will to pass the same to the sons ; the brother who had the determinable fee in such lands being living at the time of making the will.

A devise will not be permitted to fail in consequence of a misdescription of the subject matter of such devise, where the intention of the testator is apparent.

And words in a will which admit of a twofold construction, will be deemed to have been used by the testator in that sense which will render the testamentary disposition valid, and not in a sense which will render the clause in the will in which such words are used a mere nullity.

Where the testator by his will devised all his lands in a particular county ; *Held*, that his future and contingent interests, as well as his present freehold

estates in lands in such county, which he had at the time of making the will, passed by such devise.

The term lands in a will is synonymous with real estate; and unless restrained by *something else* embraces future and contingent as well as present freehold estates in land.

Where a quit-claim deed was executed, subsequent to the revised statutes, by which the grantor conveyed all his lands and tenements, wheresoever the same might be situated, with the hereditaments and appurtenances, together with the remainders and reversions; *Held,* that such deed conveyed, to the grantee, a contingent interest in remainder which belonged to the grantor at the date of the deed; and which contingent interest was limited upon a determinable freehold estate in lands.

By the term land in a deed a remainder or reversion in lands will pass. And, by the revised statutes, any future estate in lands dependant on a precedent estate, may be created or transferred by the name of a remainder.

And the word tenement embraces not only what may be inherited, but whatever may be holden in tenure.

Under the provisions of the revised statutes a mere possibility coupled with an interest, in real estate, is capable of being transferred at law as well as in equity, by a mere quit-claim deed.

March 7.    THE bill in this case was filed to obtain a partition of sixteen parcels of land in the county of Schoharie. And upon the coming in of the master's report, as to the rights and interests of the parties in the several parcels respectively, various questions arising upon the construction and effect of wills and conveyances under which portions of the premises were claimed, were presented to the chancellor for decision. From the pleadings and master's report the following undisputed facts were established : Philip Bergh the elder, who died in 1789, was the owner of the first seven parcels of which partition was sought in this suit, constituting a farm which was subsequently occupied by his son Philip in the present town of Schoharie ; and of the eighth, ninth, tenth, and eleventh parcels, called the Brakabeen lands, situated in what is now the town of Fulton. And the other five parcels of which partition was sought were purchased by Philip Bergh the younger, in his lifetime, and were owned by him in fee at the time of his death.

Philip Bergh the elder left two sons and five daughters, his only heirs at law ; to wit, Abraham, Philip, Catharine, who married D. Sternbergh, Anna Eva, who married D. Lawyer, Elizabeth, who married P. Enders, Margaret, who

married W. Deitz, and Christina, who married M. Shafer. By his will, which was executed a short time before his death, he devised certain portions of his real estate to his daughters, and another portion thereof to his son Abraham. And he devised the first seven parcels of which partition was sought in this case, constituting the Schoharie farm, to his son Philip, his heirs and assigns forever, and the next four parcels, called the Brakabeen lands, to his sons Philip and Abraham, their heirs and assigns forever. His will then contained the following clause, under which most of the questions in this suit, not only as to the effect of the clause itself but also as to the construction and effect of subsequent wills and conveyances, arose : "If one of my two sons should happen to die without issue, or both my sons should die without issue, then it is my will and order, and I do give and devise and bequeath such part, share and portion, so given and bequeathed unto either of them in this my last will and testament, unto the *reviving* son and the before named five daughters, their respective heirs and assigns, each an equal share and portion of the same forever. And if both of my two sons should happen to die without issue, such shares and portions I do give, devise and bequeath unto my before named five daughters, their respective heirs and assigns, each an even and equal share and portion of the same, forever."

Philip Bergh the younger died in January 1839, intestate and without issue, having survived his brother Abraham and his five sisters; all of whom had issue living at the time of Philip's death. And the master decided that, in the event which had happened, the contingent limitation over to Abraham and his sisters, of the Schoharie farm, and of the undivided moiety of the Brakabeen lands, was valid ; so that their descendants took the same as the heirs or devisees of Abraham and his sisters, and not as the heirs at law of Philip Bergh the younger. He also decided that as the nearest relatives of Philip Bergh the younger, at the time of his death, were nephews and nieces, and his other heirs at law were the descendants of nephews and nieces who had died in his lifetime, the surviving nephews

and nieces did not take their interests in the five last parcels, of which partition was sought, by representation, but equally; and that only the descendants of nephews and nieces took by representation.

Christina Shafer, one of the daughters of Philip Bergh the elder, died in 1800, intestate, leaving three children her only heirs at law, one of whom died in 1825 intestate, and without issue. The other two survived their uncle, Philip Bergh the younger, and were parties to the suit.°

Margaret Deitz, another daughter of Philip Bergh the elder, died in 1809, leaving six children ; all of whom survived their uncle Philip Bergh the younger. And her son Philip Deitz died in December 1839, leaving a widow him surviving, and four sons and four daughters, and six grandchildren, the issue of two deceased daughters, his heirs at law. Margaret Deitz his mother, by her will, which was executed in 1804, devised to three of her children, Abraham Deitz, Mary Dorothy the wife of J. Sidney, and Christina the wife of David Lawyer, all the land or real estate and likewise all the money or personal estate which she was to get out of her father's estate ; which said property that her father Philip Bergh gave devised and bequeathed to her in his last will and testament, she gave and devised to those three of her children in fee, share and share alike. The master decided that this devise did not pass her contingent interest in the Schoharie farm or in the Brakabeen lands, or in any way affect the premises of which partition was sought in this suit.

Philip Deitz, one of the sons of Margaret, made his will before the death of his uncle Philip Bergh the younger, to wit, in February, 1830 ; and he thereby devised to his four sons all his real estate lying and being in the county of Schoharie, subject to the payment of certain legacies to his other children and some of his grand children. And the master gave effect to this will, not only to transfer to the devisees the testator's supposed contingent interest in the Schoharie farm and in the Brakabeen lands, as one of the heirs of his mother, but also to transfer to them the inter-

est in the other five parcels, which he obtained by descent from his uncle Philip Bergh the younger, subsequent to the execution of his will, but previous to his death, in December, 1839.

Elizabeth Enders, another of the daughters of Philip Bergh the elder, died in 1834, leaving two sons and four daughters her heirs at law; one of which daughters, Elizabeth the wife of John Enders, died in 1835, leaving two children, Peter Enders, and Catharine the wife of L. Voorhees, her only heirs.  By the will of Elizabeth Enders, executed in 1831, she devised to her four daughters, Elizabeth the wife of John Enders, Nancy the wife of Philip Deitz, Catharine the wife of J. J. Borst, and Maria the widow of Jacob Enders, all her right, title and interest in the real and personal property, lands, tenements and hereditaments then in possession of her brother Philip Bergh the younger, devised and bequeathed to him by her father, and which in right in law and equity passed to her by virtue of her father's will, if her said brother should die without heirs.  And she directed the same to be divided between her four daughters equally, share and share alike, after her death and the death of her brother Philip.  The master decided that under this will the four daughters took the contingent interest of their mother in the Schoharie farm and in the Brakabeen lands, and that the two sons had no right or interest in those portions of the premises of which partition was sought.

Abraham Bergh, the other son of Philip Bergh the elder, died in 1835, leaving four children, Philip, Abraham, David, and Catharine the wife of B. Pond, his only heirs at law.  By his will, executed in 1834, he devised to his son Philip one equal undivided half of the Brakabeen lands, subject to the estate devised to his wife during her life or widowhood.  And she afterwards conveyed her interest in the same to the devisee.  The testator also devised to his sons Philip and Abraham, all his right title or interest to the real estate that might fall to him from the estate of his brother Philip Bergh the younger ; to be divided equally

between them. But the master decided that nothing passed to the two devisees under this clause of the will of Abraham Bergh; and that all the children of the testator were entitled to equal interests in the Schoharie farm, and in an undivided half of the Brakabeen lands, as heirs at law of their father.

Catharine Sternburgh, another daughter of Philip Bergh the elder, died in 1836, leaving three children, Peter, Henry, and Christina the wife of C. P. Vroman, and fourteen grand children, to wit, David the only child of her deceased daughter Catharine Deitz, five children of her deceased daughter Maria Lawyer, Catharine the wife of J. Wood, and Maria the wife of C. Carpenter, children of her deceased son Philip Sternbergh, and six children of her deceased son David Sternbergh, her heirs at law. One of the grand children, Catharine the wife of J. Wood, died in 1840, leaving her husband surviving, and five children who were her only heirs at law. Another of the grand children, H. R. Sternbergh one of the children of David Sternbergh deceased, also died subsequent to the death of Philip Bergh the younger, intestate and without issue; leaving his mother Elizabeth Sternbergh and his five surviving brothers and sisters his heirs at law. Catharine Sternbergh, by her will, which was dated in 1829, devised to her daughter Christina Vroman, the equal undivided third of all her estate and interest in the Schoharie farm, formerly owned and occupied by her father, and then in the possession of her brother Philip Bergh the younger, and also the equal undivided third of all her lands situated in the counties of Schoharie and Montgomery or elsewhere in the state of New-York. One other third of her interest in the Schoharie farm, and in all her other lands, she devised in the same manner to the children of her deceased daughter Maria Lawyer; and the remaining third she devised in like manner to David the only son of her deceased daughter Catharine Deitz. The master decided that under the will of Catharine Sternbergh the devisees respectively took all

her contingent interest in the Schoharie farm, but no part of her contingent interest in the Brakabeen lands.

Anna Eva Lawyer, the other daughter of Philip Bergh the elder, died in 1837, leaving one daughter, Catharine, the wife of W. C. Bouck, and seven grand children, the issue of her deceased son Jacob I. Lawyer, her only heirs at law. On the 1st of November, 1831, after the death of her husband, Anna Eva Lawyer, by a quit claim deed, granted and conveyed to her son-in-law, W. C. Bouck, all her lands and tenements, wheresoever they might be situated ; together with all and singular the hereditaments and appurtenances, and the reversion and reversions, remainder and remainders, &c. But the master decided that her contingent interest in the Schoharie farm and in the Brakabeen lands, under the will of her father, did not pass to the grantee by that deed. And he thereupon reported the rights and interests of the several parties to the suit in the respective parcels of land of which partition was sought, in conformity with his decisions upon these several questions.

*H. Hamilton,* for the complainants.

*S. Stevens,* for Bouck and wife ; for J. Deitz, one of the infant defendants ; and for the several defendants who claimed that Abraham Bergh and his five sisters had devisable interests in the Schoharie farm, and in the moiety of the Brakabeen lands.

*J. Rhoades,* for the other infant defendants ; and for the adult defendants whose interests were adverse to the claims of the defendants for whom Mr. Stevens appeared as counsel.

THE CHANCELLOR. The first question which I shall consider in this case is whether the master has put the right construction upon the 8th, 9th and 10th sections of the chapter of the revised statutes relative to the title to real

1843.

Pond
v.
Bergh.

property by descent. (1 *R. S.* 752.) Under the former statute of descents in this state it was provided, in the case of lineal descendants of the person last seized, that if all the descendants were of equal degree of consanguinity to him, they should take equally, however remote they might all be from him. And if any of that class had died leaving issue, that such issue should take as the representatives of the deceased relative of that class. But in relation to collateral heirs, a different rule was adopted; so that if the nearest relatives of the decedent were nephews and nieces, they did not take equally, although they all stood in the same degree of consanguinity to the testator, but they took only as the representatives of their deceased parents. And no provision was made by the 5th canon of descents, for the representation, or even for equality among relatives of the same degree, beyond brothers and sisters' children. (1 *R. L. of* 1813, *p.* 53, § 3. *Jackson* v. *Thurman,* 6 *John. Rep.* 322.) But the object of the 8th, 9th and 10th sections of the chapter of the revised statutes, on this subject, undoubtedly was to place the law of descents among lineal and collateral relatives upon the same footing in this respect. The class of nearest relatives of the decedent not only take equally where they are his only heirs at law, but all the original members of that class take equally, by themselves, or by their representatives where some of them have died leaving issue; in the same manner as if they had survived the person last seized and had then died intestate. The decision of the master that the surviving nephews and nieces of Philip Bergh the younger were entitled to share equally in the five last parcels of land mentioned in the complainants' bill, and that the issue of those who had died previous to January 1839 took by representation, was therefore the correct construction of these sections of the revised statutes.

The master erred, however, in awarding to the devisees of Philip Deitz the whole of his interest in the five parcels of land which his uncle Philip Bergh the younger acquired by purchase, and in which the testator Philip Deitz had no

interest whatever at the time of making his will, in February, 1830. Previous to the adoption of the revised statutes it was the established law that a devise of all the testator's real estate, or all his real estate in a particular place, only extended to real estate in which he had some property or interest, vested or contingent, at the time of making his will. Indeed, so far was this rule carried, that no words in a will, though showing ever so strongly the intention of the testator to devise all the real estate which he might be entitled to at the time of his death, could have the legal effect to transfer the legal estate in any after acquired lands, to the devisee. (4 *Kent's Com.* 510. *Bunter* v. *Coke,* 1 *Salk.* 237. *Powell on Dev.* 196.) The recent English statute, it is true, has changed the rule of law upon this subject entirely, by providing that every will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator ; unless a contrary intention shall appear by the will. (*Stat.* 1 *Vict. ch.* 26, § 24. *Sugd. on Wills,* 172.) Our revised statutes have not gone so far as to put wills of real estate upon the same footing as wills of personal property in this respect ; though they have unquestionably abrogated the technical rule that the testator was incapable of devising an interest in land, or real estate, acquired subsequent to the date of the will by which he attempted to dispose of the same. The 5th section of the title relative to wills of real and personal property, (2 *R. S.* 57,) declares that "every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which .he was entitled to devise at the time of his death." This statutory provision proceeds upon the ground that in a general devise of all his real estate, the testator has reference to the real estate as it shall exist at the time of his death ; and that such a construction of the testamentary disposition of his property will be but carrying his intention into effect. Upon the same principle, therefore, if he devises all the real estate

of a particular description, of which he shall die possessed, or which shall belong to him in a particular town or county, at the time of his death, although the devise would not be within the words of this section, it not being a general devise of all his real estate, I think it would clearly be within the spirit and intent of this statutory provision. But where the testator devises all his real estate at a particular place, or within a particular district of country, there is good reason to suppose he means to speak in reference to the lands he has already acquired there; and that if he intended to give to the devisee all the lands or real estate which he should afterwards purchase at that place, or within the specified district of country, there would have been something in his will indicating such an intention. Here Philip Deitz made his will about nine years before the death of his uncle. And in distributing his real and personal estate among his children and grand children, he gave to his four sons all his real estate lying and being in the county of Schoharie, subject to the payment of certain legacies to his other children and descendants. I think, therefore, he must have had reference to the real estate in that county which then belonged to him, or in which he had some right or interest; and not such as he should acquire afterwards by purchase, or devise, or by descent from others. All his children and grand children are, therefore, entitled to participate in the five parcels of land in which he acquired an interest as one of the heirs at law of his uncle Philip Bergh the younger.

In reference to the Schoharie farm, and the undivided moiety of the Brakabeen lands, it is insisted by the counsel for some of the parties that the same were devised to Philip Bergh the younger in fee; and that the limitation over was upon an indefinite failure of issue, and not upon the failure of issue living at the time of his death. If so, the limitation over was void; and he was, at the time of his death, in 1839, seized of an absolute fee in that part of the property. And in that case his heirs at law will be entitled to share therein as in the other five parcels; except as to

the moiety of the Brakabeen lands which was devised to Abraham Bergh. I think, however, that the word *reviving*, in the will of Philip Bergh the elder, was unquestionably intended for surviving. That is sufficient, according to the decisions of the court for the correction of errors in *Anderson* v. *Jackson*, (16 *John. Rep.* 382,) and in *Wilkes* v. *Lyon*, (2 *Cowen Rep.* 333,) to show that the testator did not contemplate an indefinite failure of issue of his son Philip ; but a failure of issue at the time of his death, only. Philip Bergh the younger therefore did not take an estate tail in the lands devised to him ; but a determinable fee, which fee was subject to be divested, by the executory devise over, in case he should die without leaving any issue at the time of his death.

There is no possible doubt as to the intention of the testator to limit five sixths of the remainder in fee, in the premises devised to his son Philip to the five daughters, in the event of his dying without leaving any issue him surviving. And also to give them a similar interest in the lands devised to Abraham Bergh, in case of his death without leaving any issue surviving him. That the testator intended that the daughters should take the whole property devised to each of the sons, in case both should die without leaving any issue of either behind them, I think is equally evident from the terms of the will. But the limitation over as to each share, in the first instance, is to the daughters and to the surviving son ; and the question is what disposition did the testator intend to make of the undivided sixth part of the remainder in fee, which was limited to the survivor, in such shares or portions respectively, in the event that has here occurred ? If Abraham had survived his brother, he would undoubtedly have been entitled to one sixth of the remainder in fee in the lands devised to the latter ; subject to be divested thereof in case he should die without leaving any issue surviving him. But the will contains no words of limitation which in terms give the one sixth of the remainder in fee to Abraham or his issue, after the death of Philip without issue, in the event which has

actually occurred. The devise of the remainder in fee must therefore fail as to that sixth of the property, so as to leave it absolutely in Philip Bergh the younger, and his heirs, under the previous general devise in the will, unless the court can find something in the will itself indicating an intention on the part of the testator that it should belong to Abraham or his issue, in case he should die in the lifetime of his brother and should have issue who should survive Philip Bergh the younger.

The intention of the testator, so far as it is consistent with the rules of law, must govern in the construction of a will. When, therefore, the intention is apparent, upon the whole will taken together, the court must give such a construction as to support the intent of the testator, even against strict grammatical rules. And to effectuate his evident intention, words and limitations may be transposed, supplied, or rejected. (*Marshall* v. *Hopkins*, 15 *East's Rep.* 309. *Spark* v. *Purnell*, Hob. *Rep.* 75. *Montagu* v. *Nucella*, 1 *Russ. Rep.* 165. *Doe* v. *Michlem*, 6 *East's Rep.* 486. *Fonereau* v. *Fonereau*, 3 *Atk.* 315. *Doe* v. *Hicks*, 7 *Term Rep.* 437. *Boon* v. *Cornforth*, 2 *Ves. sen.* 279. *Doe* v. *Sturlake*, 12 *East*, 515.)

Here the testator evidently intended that if his son Philip died without issue, his brother should have one sixth of that share in case he survived and left issue at the time of his own death. And I think it is equally certain that he must have intended that the same one sixth should go to Abraham, for the benefit of his issue, in case he should die in the lifetime of Philip and leave issue who should survive the latter. To effectuate this intention, however, it is necessary to supply the words, which are now only left to be inferred, as has frequently been done in similar cases. The will must therefore be construed as if the words, *or the son who has died and left issue, who are then living*, had immediately followed the words " unto the reviving son," in the will, itself. If such a construction cannot be given to the will, to carry into effect the general intention of the testator, the issue of the five daughters, in addition to their

**153**

five sixths which they are entitled to under the limitation of this contingent interest in the land devised to Philip Bergh the younger, will also be entitled to share with the issue of Abraham in the other sixth ; which would certainly be contrary to the intention of the testator, and contrary to the construction which the children of the testator themselves appear to have put upon this clause of his will.

The next question for consideration is whether these contingent interests of Abraham Bergh and his sisters, in the lands devised to Philip Bergh the younger by the will of their father, were devisable interests ; and whether any and which of them have been disposed of by will or otherwise. Whatever doubt might have formerly existed on the subject, it is now the settled law that a possibility coupled with an interest is devisable, where the person in whom the interest is to vest in the event contemplated, is known or capable of being ascertained. In other words, it is settled that in relation to all such interests, descendible and devisable are convertible terms. (*Roe* v. *Griffith*, 1 *W. Black. Rep.* 606. *Roe* v. *Jones*, 1 *H. Black. Rep.* 30 ; 3 *Term Rep.* 88, *S. C. Moore* v. *Hawkins*, 2 *Eden's Rep.* 342. 1 *Rob. on Wills*, 212. 4 *Kent's Com.* 510.) And the revised statutes in terms declare that every estate and interest, in real property, which is descendible to heirs may be devised by will. (2 *R. S.* 57, § 2. *See also* 1 *Idem*, 725, § 35.)

It being settled that Margaret Deitz, who died in 1809, had a contingent interest, in the lands devised to her brother Philip, which would have descended to her heirs if she had died intestate, what was there to prevent that interest from passing to her devisees, under the general and comprehensive terms of her will ? No particular form of words is necessary to embrace such an interest. But a general devise of all the testator's real estate will carry his real property of every description ; and every estate or interest which he has therein, either in possession, reversion, or remainder, whether absolute or contingent, unless restrained by other words of the will. (*Countess of Bridgwater* v. *Bolton*, 1 *Salk. Rep.* 236. *Watk. on Conv.* 8

*Lond. ed.* 591.) Here the testatrix devised to three of her children all the land and *real estate,* likewise all the money and personal estate, which she was to get out of her father's estate ; which property he devised and bequeathed to her in his last will and testament. These last words do not restrict her devise to the property which was given to her absolutely. For this contingent interest was also devised and bequeathed to her by the will of her father. It must also be recollected that her will was made fifteen years after the death of her father. When she speaks, therefore, of the real estate which she is to get under his will, she undoubtedly had reference to this contingent interest particularly ; although the terms of the will are broad enough to cover the lands absolutely devised to her also. The master therefore erred in not giving effect to this will, in reference to her contingent interest in the Schoharie farm and in the Brakabeen lands. . And the rights of her descendants in those portions·of the property must be declared in conformity to this decision.

The master decided in favor of the claim of the four daughters of Elizabeth Enders, under her will. It is stated in the complainants' bill that Elizabeth, one of the daughters, had died in the lifetime of the mother ; and that the two children of the former were among the heirs at law of the testatrix at the time of her death. And this is admitted in the answers of the defendants, although the master reports the fact to be otherwise. But it is immaterial which is right as respects that matter, as this is not a case in which the husband of the devisee would be entitled to an estate by the curtesy. For his wife was not seized of an interest or estate in possession in the premises during her life ; and the revised statutes contain a provision which would prevent a lapse of the devise by the death of the devisee in the lifetime of the testatrix. (2 *R. S.* 66, § 52.)

Having come to the conclusion that Abraham Bergh was entitled to a contingent interest in the lands devised to his brother, and that such an interest is devisable as well as descendible, the only question arising under his will is whether he has described that interest, in the devise to

his sons Philip and Abraham, in such a manner as to pass it to them. A devise will not be permitted to fail in consequence of a misdescription of the subject of the devise, if the intention of the testator is apparent. Thus in the case of *Doe* v. *Tofield*, (11 *East's Rep.* 246,) where the testator used the words all my *personal estates*, but it was clear, upon the face of the will, that the testator meant not what is ordinarily understood by personal estate, but real property over which he had an absolute personal power of disposition and control, such real property was held to have passed to the devisee by that description. Words which admit of a twofold construction should also be deemed to have been used in that sense which will render the devise valid, and not in a sense which would render the clause of the will in which they are used a mere nullity.

In the present case the testator having a contingent right to an equal undivided one-sixth of the lands in which his brother Philip then had a determinable freehold estate, devised to two of his sons *all his right, title, and interest to the real estate which might fall to him from the estate of his brother Philip.* Construing the term estate to mean merely the determinable interest which his brother, Philip Bergh the younger, had in the Schoharie farm, and in the Brakabeen lands, this devise was an absolute nullity. And it is scarcely more sensible, if applied to the lands which at that time belonged absolutely to his brother Philip by purchase. For the testator had no right, title, or interest in those lands which could be the subject of a devise. But if, by the estate of his brother Philip, the testator meant, as he undoubtedly did, all his interest in the lands or real estate then in possession of his brother Philip, under the will of his father, this devise is not only valid but sensible. For the testator had a devisable interest in those lands, and which might fall to him as real estate in case his brother should die without issue. It is evident, therefore, that it was that contingent interest which the testator intended to give to his two sons, by this clause of his will. And the conclusion of the master that nothing passed to

the devisees by virtue thereof, was erroneous. The rights of the children of Abraham Bergh deceased in this part of the property must be declared accordingly, in the decree.

The master was right in supposing that the devisees of Catharine Sternbergh were entitled to her contingent interest in the Schoharie farm by virtue of her will. But I think he erred in supposing that the general devise of all her lands, in the county of Schoharie or elsewhere in the state of New-York, was not sufficient to transfer to those devisees all her estate and interest in the Brakabeen lands to which she was or might become entitled under the will of her father Philip Bergh the elder. The term lands, in a will, unless restrained by something else, is sufficient to carry a future or contingent as well as a present freehold estate in lands. And in the will under consideration, I think the testatrix intended to use the word lands as synonymous with real estate; all her personal property being disposed of to the same persons by other clauses of the will. The devisees therefore are entitled to the whole of her share of the Brakabeen lands, as well as of the Schoharie farm; and the rights of her descendants must be declared accordingly.

The master was also wrong in supposing that the deed from Anna Eva Lawyer to her son-in-law W. C. Bouck, executed in 1831, did not transfer to him all her contingent interest in the Schoharie farm and in the Brakabeen lands, under the will of her father; as well as all her right and interest in any other real estate to which she was then entitled either in possession or otherwise. The words lands and tenements, as used in this deed, are sufficient to convey any freehold interest which the grantor had in any real property. By the term land, a reversion or remainder will pass. (1 *Atk. on Conv.* 2.) And by the revised statutes, a future estate dependant on a precedent estate, as the contingent interest of Mrs. Lawyer was in this case at the time of the execution of the deed to her son-in-law, is termed a remainder. The statute also declares that it may be created and transferred by that name. (1 *R. S.* 723, § 11.) The word tenements, in this conveyance, is also a word of

large signification, embracing not only what may be inherited, but whatever may be holden in tenure. ( *See Shep.*
*Touch.* 91.) Whatever other lands or property therefore
the grantor in that deed might have had, at the time it was
given, the terms of the conveyance embrace the contingent
interest which she then had in the Schoharie farm and in
the Brakabeen lands. And the question whether a possibility coupled with an interest was capable of being transferred at law, by a quit-claim deed operating under the
statute of uses only, had at the time of giving this deed
been forever put at rest, by an express provision of the revised statutes. For the thirty-fifth section of the article,
relative to the creation and division of estates, (1 *R. S.*
725,) declares that expectant estates are descendible, devisable, and alienable, in the same manner as estates in
possession. Neither can the words " in his actual possession now being," as contained in this deed, and which were
mere words of course formerly introduced into all conveyances, under the statute for transferring uses into possession, have the effect to restrict the grant to such lands only
as were in the actual possession of the grantee at the time of
the execution of the conveyance thereof; or to those in
which the grantor then had a present estate in possession.
None of the descendants of Anna Eva Lawyer have therefore any interest in her share of the Schoharie farm, or in
the Brakabeen lands, to which she was contingently entitled under the will of her father. But the whole of that
interest belongs to the defendant W. C. Bouck, in his own
right, under the deed of November, 1831. And the rights
of the parties must be declared accordingly.

The rights of the parties as they existed at the time of
the argument, and when the suit was revived, can now be
ascertained and declared in the decree without the necessity of a further reference to the master. The decree may
therefore be drawn up by the solicitors, and settled and entered by the register, according to their rights as ascertained
by this decision. It may be entered as of the time of the
revival of the suit, *nunc pro tunc*, if any of their rights have

been changed since that time, by marriages or otherwise. The usual decree for the sale of the premises will also be made; and for a distribution of the proceeds, after paying the taxable costs of all the parties out of such proceeds. And in the apportionment of the costs, the Schoharie farm, the Brakabeen lands, and the lands which belonged to Philip Bergh the younger in fee at the time of his death, must each bear a rateable share of the costs, in proportion to the proceeds of the sales of each of those three parcels.

As some of the tenants in common may have received more than their respective shares of the rents and profits of the premises, since the death of Philip Bergh the younger, the decree must reserve the right to any of the parties to apply for such further directions, upon the foot of this decree, as they may think proper to ask for in relation to such rents and profits.