## GEORGE W. JOHNSTON, PLAINTIFF, *v.* HENRY SPICER AND OTHERS, DEFENDANTS.

*Possible and contingent interests in property arising under an ante-nuptial agreement — when they are not assignable — when an action, to compel a specific performance of an agreement to transfer them, will lie after the death of the promissor — such an agreement does not prevent the title to the land from vesting in the heirs-at-law of the promissor.*

George Spicer and Ellen Dennagher, being about to marry, entered into an ante-nuptial agreement, dated June 9, 1847, which provided, among other things, "that in case of the decease of the party of the first part (Spicer), without leaving lawful issue by the contemplated marriage previous to the decease of the party of the second part, that then, and in that case, all the real and personal property he may die possessed of shall belong to and be the property of the party of the second part." After their marriage, and on or about July 3, 1883, Spicer purchased real estate in the city of New York, subject to a mortgage thereon. Spicer died intestate in July, 1884, without lawful issue, leaving his widow, who died intestate in January, 1885. After the death of Spicer an action to foreclose the mortgage was brought, in which a judgment was recovered under which the premises were sold at a price more than sufficient to pay the amount due.

Upon an application for the distribution of the surplus money the referee held that by the death of Spicer the title to the real estate became vested in his widow; that upon her death, intestate, without any heirs-at-law or next of kin, the title vested in the State, but was subsequently released by it, by chapter 377

of 1885, to certain persons named in the said act, and that they were entitled to receive the said moneys.

*Held,* error. (BRADY, J., dissenting.)

That at the time when the agreement was made, and when the marriage was solemnized, neither of the parties had any right, title or interest whatever to or in this property; that what Spicer then had, if it was anything, was the barest possibility that he would thereafter acquire the title to it, which possibility could not be made the subject of a valid sale or grant.

That as this portion of the agreement was executory in its character, the only right acquired by the wife in this property, upon the decease of her husband, was that of maintaining an action at law for damages, or in equity for the specific performance of this part of the agreement.

That the title to the property was in the husband at the time of his decease and necessarily descended to his heirs, subject to the right of action of the widow to a specific performance, if the clause in the agreement was not altogether defeated by the fact that it was testamentary in its provisions, and void because not executed as required by the statutes regulating the execution of wills.

That the State acquired no interest in the property upon which the act of 1885 could operate, and that the heirs-at-law of the husband were entitled to the surplus.

APPEAL by Francis Spicer and Emeline A. Scarff from an order made at the New York Special Term directing the disposition of surplus moneys.

*David Thurston,* for the defendants, appellants.

*Edward F. Brown,* for the defendants, respondents.

DANIELS, J. :

The moneys in controversy arose out of the sale under the foreclosure of a mortgage of the premises known as 61 East Fifty-second street, in the city of New York. The property was purchased and acquired by a deed executed and delivered to George Spicer, on or about the 3d of July, 1883, subject to the mortgage under which the sale was made. In July, 1884, Spicer died intestate, leaving the appellants and others his heirs-at-law. His widow survived him until the 18th of January, 1885, when she died intestate without issue, and leaving no known heirs. Prior to her intermarriage with Spicer, and on or about the 9th of June, 1847, she entered into an ante-nuptial agreement with him by which it was covenanted and agreed that in the case of the decease of the party of the first part, without leaving lawful issue by the contem-

plated marriage previous to the decease of the party of the second part, that then and in that case all the real and personal property he may die possessed of shall belong and be the property of the party of the second part.

After the decease of the widow, chapter 377 of the Laws of 1885 was enacted, releasing the right and interest of the State in the lands to the persons to whom, by the order appealed from, the surplus money has been awarded. The order seems to have proceeded upon the theory that by this clause in the agreement the title to the property vested in the widow of George Spicer at the time of his decease, and she having died without heirs it became the property of the State, and was released by this act to the persons held to be entitled to the surplus. And whether this direction was correctly made will depend upon the construction and effect of this clause of the ante-nuptial agreement. If at the time when the agreement was entered into George Spicer had owned the real estate out of which the surplus moneys arose, then a contingent interest, title or estate in it would have vested in the other party to the agreement, who subsequently became his wife. (*Hathaway* v. *Payne*, 34 N. Y., 92, 104, 107; *Long Island R. R. Co.* v. *Conklin*, 29 id., 572.) For as an agreement between these parties contemplating marriage, it was an instrument legally binding upon each of them. (Laws 1849, chap. 375, § 3; *Young* v. *Hicks*, 27 Hun, 54; affirmed, 92 N. Y., 235.) But at the time when the agreement was made, and also when the marriage itself was solemnized, neither of these parties had any right, title or interest whatever to or in this property. There was accordingly in the husband no expectant estate in it as such estates have been defined by the statute, and no interest which by its provisions were made descendible, devisable or alienable. (2 R. S. [6th ed.], 1103, § 35; *Pond* v. *Bergh*, 10 Paige, 140.)

The effect of this part of the instrument is therefore to be determined by the settled principles of the common law, and by them a mere possibility, or contingency, unconnected with any interest in, or growing out of, property, cannot be made the subject of a valid sale or grant. (2 Kent [7th ed.], 592, note *e*.) A mere possibility is not the subject of a grant, although it may be released to the owner of the land. This subject was considered

in *Jackson* v. *Catlin* (2 Johns., 248), and the principle was there reiterated by KENT, C. J., delivering the opinion of the court, that "a mere possibility is not the subject of a grant, unless it be a possibility coupled with an interest." (Id., 261.) And these authorities, to that extent at least, have not since been questioned or overruled. And that was deemed to be the settled law of the State by Senator TRACY, whose opinion was adopted by the Court of Errors for the decision of the case of *Jackson* v. *Waldron* (13 Wend., 178; Id., 222). The same principle was fully reviewed again by that court in *Edwards* v. *Varick* (5 Denio, 664), and it was there held to be part of the settled law of the State. (Id., 692, 693.) What Spicer had, if he can be said to have had anything whatever, at the time when the agreement was made, was no more than the barest possibility that he would acquire the title to this property, as he did by the conveyance made to him in the year 1883. As a grant, therefore, the agreement in no manner operated upon it, or conveyed any interest in it, to the person who became his wife. But this portion of the agreement was, at most, executory in its character, entitling her to its specific performance after the period of his own decease. And agreements for the transfer or conveyance of a possible interest afterwards accruing in property have been so considered and enforced by courts of equity. This subject was very fully and exhaustively examined in *Stover* v. *Eycleshimer* (46 Barb., 84), and this conclusion was considered to be the effect of the authorities.

Under these principles the extent of the right of the widow in this property, upon the decease of her husband, was that of maintaining an action at law for damages, or in equity for the specific performance of this part of the agreement. The title was in himself at the time of his decease, and it necessarily descended to his heirs, subject to this right of the widow, to a specific performance, if the clause in the agreement is not altogether defeated by the fact that it was testamentary in its provisions, and void for the reason that it was not executed in compliance with the provisions of the statute directing the ceremonials to be observed for the legal execution of a will. Certainly the State acquired no interest in the property upon which the act of 1885 could be made to operate, and as the widow took no proceedings to compel the specific per-

formance of the agreement, the legal title to the property since her decease continued to be vested in the heirs of the husband until the foreclosure and sale of it were made, and being seized of that title they legally owned the surplus arising out of the foreclosure sale, which took place after the decease of the widow.

The order made should be reversed and an order entered directing this surplus to be distributed among the heirs-at-law of George Spicer, but without costs against the respondents.

Churchill, J., concurred; Brady, P. J., dissented.

Order reversed, without costs, and order entered as directed in opinion.