[No. 1985]

## LUTHER CAMPBELL, Appellant, *v.* GOLDFIELD CONSOLIDATED WATER COMPANY, Respondent.

1. WATERS AND WATER COURSES — MINING LOCATIONS — APPROPRIATIONS.
     The location of a mining claim on land in which a spring arose will give the locator no claim to the water flowing from the spring in a natural channel, as against an appropriator; for a title to such flow can only be acquired by appropriation and application to a beneficial use.

2. WATERS AND WATER COURSES—SPRINGS—APPROPRIATIONS.
     Where the waters of a spring flow in a natural water course, they are the subject of a beneficial appropriation.

3. WATERS AND WATER COURSES—CHANGE IN USE OF WATER BY APPROPRIATION.
     One having no right to the waters of a spring which flow in a natural water course cannot object that a prior appropriator has changed his use of the stream.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers,* Judge.

Action by Luther E. Campbell against the Goldfield Consolidated Water Company. From a judgment for defendant, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Thompson, Morehouse & Thompson,* for Appellant.

*Potter, West & Potter, W. H. Bryant,* and *Henry M. Hoyt,* for Respondent.

By the Court, NORCROSS, J.:

This is an action to quiet title to a certain spring, known as Hyde spring, and the waters therein and flowing therefrom, and for a permanent injunction restraining respondent from interfering therewith.

Plaintiff, appellant herein, in his complaint asserted title to the spring in question, and the waters flowing therefrom, by virtue of ownership of a certain unpatented mining claim known as the "Capricorn" in the Lida mining district, county of Esmeralda, which he

alleged embraced said spring, and that he and his grantors and predecessors in interest had been in the exclusive possession and occupation of said mining claim, including said spring, for more than four years prior to the commencement of the action. The complaint further alleged: "That said spring of water and the flow therefrom is a part and parcel of said lands hereinbefore described, and has not been appropriated or diverted by any person or persons."

Defendant, respondent herein, in its answer denied specifically the allegations in the complaint, and set up ownership in itself of the land embracing said spring by virtue of a certain mining location known as the "December South," made on the 29th day of December, 1904, by the grantors and predecessors in interest of respondent, and by virtue of a relocation of said ground as a mining claim, known as the "Spider No. 1," made on the 1st day of January, 1907, by certain others of respondent's grantors and predecessors in interest.

For a further answer and defense, respondent set up ownership of the spring and the waters flowing therefrom by virtue of an actual appropriation of the waters flowing from said spring and the application thereof to a beneficial use by its grantors and predecessors in interest, and, also, an appropriation regularly granted to the grantors and predecessors in interest of respondent, by the office of the state engineer of the State of Nevada, made on June 22, 1908, under and by virtue of that certain act of the legislature, relative to the appropriation of waters, approved February 16, 1903, as amended March 1, 1905.

Defendant prayed for judgment that plaintiff take nothing by this action, and that defendant be decreed to be the owner of the spring in controversy and the waters flowing therefrom.

The court below found as facts that the plaintiff was the owner of the Capricorn claim (located January 1, 1908); that the spring in controversy was within the

boundaries of defendant's Spider No. 1 claim.    That on December 29, 1904, W. H. Hyde, C. L. Hyde, and K. P. Allred located the said December South claim, and thereafter perfected such location, and that the said claim included the said spring, and that said Hydes and Allred continued in the occupancy thereof until the 1st day of January, 1907.    That at the time of the location of said December South claim the said spring thereon and the waters flowing therefrom were public waters of the State of Nevada.    That in the month of December, 1905, the said Hydes and Allred applied all the waters flowing from said spring to a beneficial use by using the same for mining and domestic purposes and the irrigation of certain lands.    That on the 20th day of December, 1905, the said Hydes and Allred made application to the state engineer to appropriate said waters for a beneficial use, and thereafter on the 22d day of June, 1908, the said state engineer issued his certificate of appropriation to the defendant as the assignee and grantee of the said Hydes and Allred, which said certificate contains the following provisions:

"Amount of appropriation, 1 cu. ft. per sec.; amount of prior appropriations, 0 acre-feet per year; date of appropriation, Dec. 20, 1905; description of land to be irrigated, and for which this appropriation is determined, 3 acres during 1906–07–08 in S. W. ¼ Sec. 31 T. 5 S. R. 41 E. and S. E. ¼ Sec. 36 T. 5 S. R. 40 E.

"The right to water hereby determined is limited to irrigation and the use is restricted to the place where acquired and to the purpose for which acquired; rights for irrigation not to exceed three acre-feet per year for each acre of land for which appropriation is herein determined."

That on the 1st day of January, 1907, the said December South mining claim, being then subject to forfeiture for failure to perform the annual labor thereon, was relocated by one Speed Barnes under the name of the "Spider No. 1" claim, and thereafter and on the 16th day of December, 1907, the said Speed Barnes sold the said

Spider No. 1 claim to said K. P. Allred, who thereafter, and on the 15th day of July, 1908, sold and transferred the said Spider No. 1 claim to the defendant; that ever since December 29, 1904, the defendant and its predecessors in interest have at all times been in the actual, quiet, and peaceable possession of said spring, the stream of water flowing therefrom, and the pipes and ditches conveying the same, and said waters have at all times, under their direction and control, been applied to a beneficial use for mining, domestic and irrigating purposes, and during all of the time herein mentioned said defendant and its predecessors in interest have been in the peaceable, quiet, and lawful possession of said pipe line and ditches used for diverting said waters. Upon these findings judgment was entered in favor of the defendant, decreeing it to be the owner of the said Hyde spring and the waters flowing therefrom, and also to be the owner of the Spider No. 1 lode mining claim as described in said judgment and decree, which description embraced the said Hyde spring.

1. There is evidence sufficient to support all the findings in the case with the possible exception that the Spider No. 1 claim, as originally located, embraced the spring in controversy. There is evidence in the case which might tend to support appellant's contention that the side lines of the Spider claim were, subsequently and after appellant had located the "Capricorn," changed so as to include the spring, but we do not consider this question material as affecting defendant's superior right to the water based upon actual appropriation, and we express no opinion upon the question of the sufficiency of the evidence to support this finding. Conceding for the purposes of this case, without so deciding, that the spring may be within the exterior limits of the "Capricorn" claim, such fact, nevertheless, would avail plaintiff nothing. He does not assert any right to the flow of water from this spring by virtue of appropriation, but bases his right solely upon the alleged ownership of a mining claim, the exterior boundaries of which he alleges embrace the spring. This,

in the absence of an appropriation of the water flowing from the spring in a natural channel, would give the plaintiff no right thereto as against an appropriator. Title to such flow may only be acquired by appropriation and application to a beneficial use. The court below found that long prior to plaintiff's location of the Capricorn claim, the grantors and predecessors in interest of defendant had appropriated the flow from the spring and applied the same to a beneficial use, and that ever since such time defendant and its grantors and predecessors in interest had continued to so apply such flow of water.

**2, 3.** Many other questions are raised in the brief of counsel for appellant, and discussed at length by respective counsel, but we think it is unnecessary to consider them. For example, it is contended that a spring is not subject to appropriation; that the purpose of the appropriation may not be changed without consent of the state authorities. Whatever may be the law respecting a spring from which no water flows, there can be no question as to the right to appropriate water flowing in a natural water course, the source of which is a spring. As to the question of a change in the purpose of the diversion to a different beneficial use from that of the original appropriation, appellant, not having any interest in the water by virtue of an appropriation, is in no position to complain.

Appellant, not having established any appropriation of the water whatever, and respondent having established an appropriation thereof upon the part of its grantors and predecessors in interest long prior to the time appellant claims to have initiated his right by location of the mining claim, and respondent and its predecessors in interest having since such appropriation continuously diverted said water and applied the same to a beneficial use, the superior right to the flow of water from the spring is in respondent.

The judgment should be modified to correspond to the prayer for judgment in the answer, and as so modified is affirmed.