In the Matter of the Application of IDA L. GALLIEN and Another, as Executors, etc., of BRACE M. GALLIEN, Deceased, for the Construction of the Last Will and Testament of BRACE M. GALLIEN, Deceased.

WESLEYAN UNIVERSITY and Others, Appellants; IDA L. GALLIEN and Another, as executors, etc., Respondents.

Third Department, July 1, 1927.

Wills — construction — unlawful suspension of power of alienation — will devised property in trust to pay part of income to foster daughter for life and balance to wife for life — in case of death of wife before son direction was to expend enough for support of son for life — provision was made for distribution of remainder after " deaths of the beneficiaries " — will is invalid as unlawfully suspending power of alienation for more than two lives in being.

Testator devised property in trust with direction to pay therefrom a stated amount monthly to his foster daughter for life and the balance of the income to his wife for life, and in case his wife should be survived by the son, to expend such balance of the income as might be necessary for the son's proper support and maintenance. The will then provided that when the " above payments shall cease by reason of the deaths of the beneficiaries mentioned," the remainder shall be divided as stated in the will. The will is invalid, since there is an unlawful suspension of the power of alienation in that one entire trust fund is established for the benefit of three people for life.

COCHRANE, P. J., dissents, with opinion; DAVIS, J., dissents, with memorandum.

APPEAL by Wesleyan University and others from a decree of the Surrogate's Court of the county of Albany, entered in the office of said Surrogate's Court on the 21st day of December, 1926.

*Neile F. Towner,* for the appellant Wesleyan University.

*Newton ·B. Van Derzee,* for the appellant First Presbyterian Church of Albany.

*Townsend & Kindleberger* [*Arthur O. Townsend* and *E. Crosby Kindleberger* of counsel], for the appellants Addison J. Gallien and others.

*Melvin T. Bender,* for the respondents Ida L. Gallien and Henry Gallien, executors.

*Herman J. Diekman,* special guardian, for the respondent Brace Goodwin Gallien, an incompetent.

*Arthur L. Andrews,* for the National Commerical Bank and Trust Company, Trustee.

*Gilbert V. Schenck,* for Kenneth Gallien.

WHITMYER, J.  The surrogate has decided that the entire will is void, on the ground that the trust created by it suspends the power of alienation of testator's real and personal property for a longer period than during the continuance of two lives in being at the creation of the trust estate, contrary to the provisions of section 42 of the Real Property Law and section 11 of the Personal Property Law, and that the subsequent provisions fall with it, on the ground that they are dependent on and inseparable from the trust.  (128 Misc. 370.)

This proceeding was brought by testator's wife, as executrix, and his brother Henry, as executor.  The will was made May 27, 1921.  Testator died April 14, 1926.  He left him surviving his wife, Ida L. Gallien, his son, Brace Goodwin Gallien, of full age, but an idiot, and a so-called foster daughter, Mabel Crans. She died four days after the death of the testator.  It is said that the estate is between $150,000 and $200,000.  The will is holographic and was written on a printed form.  After directing the payment of his debts, the testator gives, devises and bequeaths the remainder of his estate to the National Commercial Bank and Trust Company of Albany, N. Y., as trustee, in trust, to pay from the income thereof to " our foster daughter " Mabel Crans, as he described her, as long as she may live, the sum of $50 per month for her personal use; to pay the balance of the income to his wife, Ida L. Gallien, as she may desire it; and, if she is survived by the son, to expend such balance of income or so much thereof

as may be necessary for his proper support and maintenance. The will then provides: " When the above payments shall cease by reason of the deaths of the beneficiaries mentioned, I direct my said trustee to pay the following bequests in the order mentioned, dividing the residue of my estate into six equal parts." The six parts are, one-sixth to his brother Henry, in case of Henry's prior death to Henry's son, Henry, Jr., and, in case of his prior death, back to testator's estate; one-sixth to his brother Addison J., in case of his prior death to Addison's wife, in case of her prior death to their son Kenneth, in case of Kenneth's prior death to Kenneth's brother Paul, in case of Paul's prior death to Paul's brother Gurnee, and if none survive then back to testator's estate; one-sixth to the permanent endowment fund of the First Presbyterian Church of Albany; one-sixth to the permanent general endowment fund of Wesleyan University; one-sixth in trust and the income therefrom in monthly installments to his sister Clara K., and in case of her death, to her two sons, Thomas and Milton, equally, or all to the survivor, and at their death, the said one-sixth to revert to testator's estate; and the residue, with any reversions, to be equally divided between the said endowment funds of the First Presbyterian Church of Albany and Wesleyan University. Finally, he names his wife as executrix and his brother Henry as executor. The division of the residue into parts presents certain questions, but the surrogate rested his decision upon the invalidity of the provisions for the widow, the son and the so-called foster daughter, so that it will be necessary to consider only those provisions. The executrix and the executor, as such, are attacking the will. Testator provides for Mabel Crans, his wife, and his son, for their lives, and his estate is not to be divided until all three have died. The trust is to continue for three lives and, unless the provisions are separable, it will follow that absolute ownership and the power of alienation are unduly suspended. In construing a will the first step is to ascertain the testator's intention, as expressed in his will, and the next is to give effect to it, if possible. While the rules as to the suspension of the power of alienation are explicit, their application is at times difficult and the court will give them a reasonable application to effectuate the testator's intention, but apt legal words must be used to make it effective as against the statute. (*Matter of Trevor*, 239 N. Y. 6, 11, 12, 16, 18.) If what is good is separable from what is bad, severance of what is bad may be made, so as to prevent intestacy, either partial or total. (*Harrison* v. *Harrison*, 36 N. Y. 543; *Kalish* v. *Kalish*, 166 id. 368, 374, 375; *Matter of Horner*, 237 id. 489, 493, 502.) And the surrounding circumstances may be considered. Testator and his wife were

Third Department, July, 1927.                    [Vol. 221.

getting along in years. They had an adult son, who had been an incompetent since birth. Mabel Crans had been and was taking care of him in some sort of capacity. Testator called her " our foster daughter," but she had not been adopted. In this situation, with an estate worth from $150,000 to $200,000, he planned and drew his will. He desired to provide for all three. He did in the way stated. Then he had certain desires in connection with the residue and he gave that to relatives on his own side of the family and to his church and college. And he named his bank as trustee, so that his wife might not be burdened with trust duties. His intention is clear and it should be carried out, if it may be. But here a difficulty arises. He gives $50 per month out of income to Mabel Crans for life and the balance of the income to his wife for her life and then for the benefit of his son, during his life. It is the entire income which is thus to be divided, and such division is to continue during the three lives. The testator created a trust for the purpose, with title in the trustee, and the provision for Mabel Crans, whatever it may be called, is a part of the trust and is inalienable by her. (Real Prop. Law, §§ 96, 103; *Cochrane* v. *Schell*, 140 N. Y. 516, 534, 535.) It may be that the testator did not think of the result which would follow in case she survived, but the language is clear and her life is included as one for the measurement of the duration of the trust. And the result is not changed by the fact that she survived the testator only a few days. What might have happened is the determining factor. The decision in *Hooker* v. *Hooker* (166 N. Y. 156, 158) is in point. There, the testator gave his property, after payment of his debts, to a trustee to pay to his wife the sum of $100 per month so long as she remained unmarried and upon certain other conditions, then directed a yearly division of unexpended balance of income into three equal parts, one part to his wife, the other two parts to be invested for his two children, and, after certain provisions for wife and children under certain contingencies, directed a division of the balance of his estate in the following language: " Upon the death of my daughters, leaving no issue, and after the provisions of this my last will made for the benefit of my wife, shall have been carried out, I order and direct my executor to divide the balance of my estate into four (4) equal parts and dispose of the same as follows." The division followed. The Court of Appeals decided that the trust was measured by three lives. The provision was similar to the one here. The cases of *Buchanan* v. *Little* (154 N. Y. 147, 152) and *People's Trust Co.* v. *Flynn* (188 id. 385, 392, 393) are not similar. The duration of the trust in each of those cases was made dependent upon the lives of the two daughters named in

each. Here the provision for Mabel Crans is not separable from the provision for the wife and son. And the division of the remainder is not to be made until the termination of the three lives. Thus, that is dependent upon and inseparable from the trust and falls with it. The case is one where a saving interpretation should be made, if possible, but the language prevents.

It seems to me that it will be necessary to affirm the decree of the surrogate.

HINMAN and McCANN, JJ., concur; COCHRANE, P. J., dissents with opinion in which DAVIS, J., concurs in a memorandum.

COCHRANE, P. J. (dissenting). By the will of Brace M. Gallien, now deceased, he gave his entire estate in trust and described the purposes of the trust in directions to the trustee as follows: " From the income thereof to pay monthly to our foster daughter, Mabel Crans, so long as she may live, the sum of fifty dollars ($50) per month for her personal use. The balance of the income of my estate is to be paid to my wife Ida L. Gallien as she may desire it. If my said wife should be survived by our son Brace Goodwin Gallien, then the said balance of income or so much thereof as may be necessary is to be expended for his proper support and maintenance. When the above payments shall cease by reason of the deaths of the beneficiaries mentioned, I direct my said trustee to pay the following bequests in the order mentioned, dividing the residue of my estate into six equal parts." The nature of the division of the estate after the termination of the trust and the other parts of the will are immaterial to the present discussion.

This will has been held invalid because the testator suspended the power of alienation of his estate for three lives in being, The question is whether the language of the will in the light of surrounding circumstances compels the conclusion that he so intended. We should strive as far as possible for such a construction as will render the will effectual rather than invalid. He left an estate of between $150,000 and $200,000. He first directed his trustee to pay Mabel Crans $50 monthly as long as she lived. This is said to be the first of the three lives. He speaks of her as his " foster daughter." We know nothing further of his relations to her nor of her circumstances. It is said that he had not legally adopted her. It does not appear that she was a member of his family nor that she was performing any duties in respect either to his wife or incompetent son. It is reasonably clear that he did not expect the $50 monthly payment to constitute her entire support and maintenance. The amount of his estate forbids such an inference, especially in view of the provision in the will that all the rest of the

income was to go to his wife " as she may desire it," and the further provision that in case his son survived his wife " then the said balance of income or so much thereof as may be necessary is to be expended for his proper support and maintenance." In providing for his son the testator speaks of " his proper support and maintenance " and clearly implies that there may be more than sufficient income for that purpose. But in providing for his " foster daughter " he intended the provision to be, not for her support and maintenance as in the case of his son, but " for her personal use," as he expressed it. It was something carved out of what would otherwise go to his wife or son. The dominating purpose of the testator was to care for his wife and incompetent son. Although making some provision for his " foster daughter," that was less important. With these thoughts in mind we approach the question as to whether the testator intended the division of his estate to depend on the life of his " foster daughter." If so we have the incongruous and unreasonable result that should she survive his wife and son the entire estate would be held in abeyance during her remaining life with no provision for the payment or distribution of its income except as to the small proportion of the estate needed to produce the income of fifty dollars monthly. The question whether the testator intended such a result answers itself. He clearly did not so intend. On the contrary, he must have intended that the trust should continue only during the lives of his wife and son who were the chief objects of his solicitude. Can the will be so construed as to effectuate that intent? In framing and connecting his sentences the testator did not exercise the precision and accuracy desirable in the formation of a will. But as stated in *Denison* v. *Denison* (185 N. Y. 438, 445): " This is a case for the application of the rule that in order to effectuate the intention of the testator derived from the whole will, grammatical rules may be disregarded and words and limitations may be transposed, supplied or rejected. (*Pond* v. *Bergh*, 10 Paige, 140, 152; *Phillips* v. *Davies*, 92 N. Y. 199; *Starr* v. *Starr*, 132 N. Y. 158.) " As above pointed out the chief concern of the testator was his wife and son. When immediately after providing for them he referred to the " beneficiaries mentioned " he evidently had those two in mind because if he had all three in mind he would have produced the unthinkable result above pointed out. In order to effectuate the clear intent of the testator we have merely to transpose " words and limitations " as authorized by the authorities above cited. This is not a mutilation of the will but a preservation thereof in accordance with its plain intent. This construction would not jeopardize the rights of Mabel Crans in case she might have survived the wife and son.

In that event the present value of the monthly payments would have been ascertained and paid over to her. The fact that those monthly payments are directed to be paid by a trustee out of a trust fund does not militate against such a conclusion. (*Buchanan v. Little,* 154 N. Y. 147; *People's Trust Co.* v. *Flynn,* 188 id. 385.) In view of those cases we need not speculate as to whether the provision for Mabel Crans should be technically denominated an annuity. Whatever its nature she would under all circumstances be adequately protected under the construction of the will here suggested. The case of *Hooker* v. *Hooker* (166 N. Y. 156) presents no analogy to the present case. Precedents in the construction of wills rarely present close analogies. In that case alienation of the trust estate was clearly suspended for three lives independently of the monthly payment to the wife of the testator.

Other provisions of the will present questions which it is unnecessary now to consider.

The decree should be reversed and the proceeding remitted to the surrogate.

DAVIS, J., concurs in memorandum as follows: I concur with COCHRANE, P. J., for reversal. I think the trust is severable. (*Matter of Horner,* 237 N. Y. 489; *Matter of Trevor,* 239 id. 6, 15; *Matter of Buttner,* 243 id. 1; *Matter of Chittick,* 216 App. Div. 179, 180; mod., 243 N. Y. 304.)

Decree affirmed, with costs to all parties filing briefs, payable out of the estate.