LEWIS J. PHILLIPS et al., Executors, etc., Respondents, *v.* MARIA DAVIES et al., Appellants.

Where, upon examination of a will, taken as a whole, the intention of the testator appears clear, but its plain and definite purposes are endangered by inapt or inaccurate modes of expression, the court may, and it is its duty to, subordinate the language to the intention; it may reject words and limitations, supply or transpose them to get at the correct meaning.

M., at the time of making her will, and of her death, owned a large amount of real estate but only a small amount of personal property. By her will,

after providing for the payment of debts, she first gave her estate, real and personal, to her executors in trust, to rent, etc., and apply the rents, income, etc., to the use of her husband during his life. Then followed ten clauses purporting to create separate and independent trusts ; also numerous legacies, all of which would substantially fail in the absence of a trust estate, or power in trust vested in the executors, by force of which the real estate could be sold and converted into money. Certain real estate was also specifically devised, and the executors were directed to pay off incumbrances thereon, which, in the absence of such power, could not be done. The clause appointing executors contained the following: " and during the life-time of my said husband my said executors, and such and whichever of them as shall act, are authorized and empowered, by and with the consent of my said husband, to sell and dispose of any part of my estate, real and personal, not specifically bequeathed." In an action for a construction of the will, *held*, that said clause was to be construed as conferring upon her executors a power of sale, which during the life of her husband, was to be exercised only with his consent, but thereafter continuing to exist; and that, therefore, the executors had power to sell after the death of the husband, and convert into money so much of the real estate as was not specifically devised.

(Argued March 16, 1883 ; decided April 17, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made December 14, 1882, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a construction of the will of Matilda Phillips, deceased.

The substance of the will and the material facts appear in the opinion.

*William Allen Butler* for appellants. The due execution of a power requires a substantial compliance with every condition which precedes or accompanies its exercise. After the death of her husband the power of sale given by the testatrix could not by any possibility be exercised. (*Matter of Vanderbilt*, 20 Hun, 122 ; 1 R. S. 737, §§ 121, 122 ; Hill. on Trustees, 478 ; *Allen* v. *De Witt*, 3 N. Y. 276 at 278 ; *Barber* v. *Cary*, 11 id. 397 ; *Hetzel* v. *Barber*, 69 id. 1 ; *Richardson* v. *Sharpe*,

29 Barb. 222.) The sole devise in trust of the real estate having been for the life of John D. Phillips, and the sole power of sale having been conditioned on its exercise during his life and with his consent, and neither the devise nor the power having ever taken effect, owing to the failure of the executors to qualify during his life, the plaintiffs had no right to commence this action for the construction of the will. (*Dill* v. *Wisner*, 88 N. Y. 153 at 160; *Bailey* v. *Briggs*, 56 id. 407 at 413; *Post* v. *Hover*, 33 id. 593; *Bowen* v. *Smith*, 10 Paige, 193; *Chipman* v. *Montgomery*, 63 N. Y. 221; *Monarque* v. *Monarque*, 80 id. 320; *Onderdonk* v. *Mott*, 34 Barb. 106; *Bailey* v. *Briggs*, 56 N. Y. 407, 413; *Mead* v. *Mitchell*, 17 id. 210; *Brevoort* v. *Brevoort*, 70 id. 136.) If this action can be sustained and the question of the intent of the testator as to the powers of the executors is to be inquired into, the title of the heirs at law will not be disturbed unless it is made plainly to appear that the testatrix intended that her real estate, if unsold at her husband's death, should not descend to them, but should vest in the executors surviving her husband for the purposes of the will. (2 Jarman on Wills, 744; 1 id. 465; *Lynes* v. *Townsend*, 33 N. Y. 558; *Roe* v. *Blackett*, Cowp. 235; 1 Bro. C. C. 441; *Moore* v. *Heaseman*, Willes, 141; *Hay* v. *The Earl of Coventry*, 3 T. R. 83; *Wheaton* v. *Andress*, 23 Wend. 462; *Post* v. *Hover*, 33 N. Y. 593 at 599; *Rathbone* v. *Dyckman*, 3 Paige, 9; Redfield on Wills, 425, n. 5, p. 434, § 18; *Allen's Ex.* v. *Allen*, 18 How. [U. S.] 385; *Lynes* v. *Townsend*, 33 N. Y. 570; *Roberts* v. *Corning*, 23 Hun, 303; *Harvey* v. *Olmstead*, 1 N. Y. 493; *Vanderzee* v. *Vanderzee*, 30 Barb. 331; affirmed, 36 N. Y. 231; *Vanderwerker* v. *Vanderwerker*, 7 Barb. 221; *Van Kleck* v. *The Reformed Dutch Church*, 6 Paige, 600–612; *Schauber* v. *Jackson*, 2 Wend. 26; *Delafield* v. *Parish*, 25 N. Y. 9; *Crowningshield* v. *Crowningshield*, 2 Gray, 526) The court below erred in construing the will to intend that the trust estate or the power of sale as to the real estate should extend beyond the life of John D. Phillips, the husband of the testatrix. (*Richardson* v. *Sharpe*, 29 Barb. 222; *Dunsdee* v. *Goldbacker*, 8 Abb. [N. S.] 439.)

It was error in the court below to assume that the testatrix, when she made her will, had in view a personal estate of only $16,000, and that, therefore, she must have intended to give a power of sale to extend beyond the life of her husband. (*Bevan* v. *Cooper*, 72 N. Y. 317; *Reynolds* v. *Reynolds*, 16 id. 257; *Lupton* v. *Lupton*, 2 Johns. Ch. 623; *Harris* v. *Fly*, 7 Paige, 423; *Myers* v. *Eddy*, 47 Barb. 263; *Taylor* v. *Dodd*, 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch*, 67 id. 354; *Hoyt* v. *Hoyt*, 85 id. 142; *Covenhoven* v. *Schuler*, 2 Paige, 129, 130; *Trustees of Theological Seminary* v. *Kellogg*, 16 N. Y. 88, 89; 1 Jarman on Wills, 411, 412, 415, 416; *Simms* v. *Dougherty*, 5 Ves. 247; *Post* v. *Hover*, 33 N. Y. 599; *Van Nostrand* v. *Moore*, 52 id. 12.) The will took effect at the death of the testatrix, and the property must be viewed as it was at her death. The power of sale, being discretionary, did not constitute an equitable conversion of the real estate into personalty. (*Stagg* v. *Jackson*, 1 N. Y. 206; *Allen* v. *De Witt*, 3 id. 276; *Lovett's Ex'rs* v. *Gillender*, 35 id. 617; *White* v. *Howard*, 46 id. 162; *Harris* v. *Clark*, 7 id. 242, 261; *Reed* v. *Underhill*, 12 Barb. 113; *Hetzel* v. *Barber*, 69 N. Y. 1, 7; *Lucas* v. *Brandreth*, 28 Beav. 273.) There can be no presumption of any other intent than that which the words employed in a will express, and the rule which permits a construction in aid of an intent not clearly expressed never allows a disregard of plain provisions which speak positively, and which must have full effect given to them, even though the result may be to make it impracticable to execute the will as to all its provisions. (*Myers* v. *Eddy*, 47 Barb. 263; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Schauber* v. *Jackson*, 2 Wend. 13 at 33.)

*Everett P. Wheeler* for respondents. The court has jurisdiction at the suit of an executor upon whom a power of sale is conferred by a will, to be exercised by him for the benefit of third parties, to entertain a suit for the construction of a will, and to obtain the instruction of the court as to his duty in the premises. The power is such cases is a power of trust.

(1 Rev. Stat. 734, § 94 [Edmonds' ed., p. 684]; 1 Redfield on Wills, 492; *Dill* v. *Wisner*, 88 N. Y. 153; *Delancy* v. *Van Aulen*, 84 id. 16.) The directions to create certain trust funds by investment in personal securities must fail entirely unless a power to sell the real estate exists. When this is the case and the directions are imperative a power of sale will always be implied. (*Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354; *Hoyt* v. *Hoyt*, 85 id. 142; *Taylor* v. *Dodd*, 58 id. 335; *Shulters* v. *Johnson*, 38 Barb. 80; *Livingston* v. *Murray*, 39 How. Pr. 102; *Connover* v. *Hoffman*, 1 Bosw. 214; *Van Vechten* v. *Keator*, 63 N. Y. 52; *Tucker* v. *Tucker*, 5 id. 408, 413; *Meak-ings* v. *Cromwell*, id. 136; *Hoyt* v. *Hoyt*, 85 id. 142, 149; *Lupton* v. *Lupton*, 2 Johns. Ch. 614.) It is the intention of the testator expressed in the will which is to govern. (1 Redfield on Wills, 432; *DuBois* v. *Ray*, 35 N. Y. 162, 175.) If the intention is that the real estate shall be converted into money, it will be considered in equity as so converted, from the time the conversion is directed to take place. (*Fisher* v. *Banta*, 66 N. Y. 468, 477; *Kalbfleisch* v. *Kalbfleisch*, 67 id. 354; *Inglis* v. *Trustees Sailors' Snug Harbor*, 3 Pet. 99, 117; *Towns* v. *Wentworth*, 11 Moo. P. C. 526, 543; *Abbott* v. *Carpenter*, 7 H. of L. Cas. 68; *Biddulph* v. *Lees*, 1 Ell. Bl. & Ell. 289.) The intent of the testator as manifested by the whole will should control and the consent of the husband required by the last clause is a limitation which expired upon his death, leaving the executors an unlimited power to sell thereafter. (*Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354; *Inglis* v. *Trustees S. S. H.*, 3 Pet. 99–117; *Towns* v. *Wentworth*, 11 Moore's P. C. 526, 543; *Abbott* v. *Carpenter*, 7 H. of L. Cas. 68; *Biddulph* v. *Lees*, E. B. & E. 289.)

FINCH, J. The courts which have construed this will were so impressed with the necessity of a trust estate, or power in trust vested in the executors, by force of which the real estate could be sold and converted into money, to effect the carefully framed and deliberately expressed purposes of the testatrix, that they have sustained a trust power as arising by implication,

and have been ready to put a construction upon the last clause of the will somewhat different from that suggested by the order of its language. That clause is as follows : "I hereby nominate and appoint my beloved husband, John D. Phillips, and my sons, Louis, Isaac, Henry J. and Asher L., executors of this my last will and testament, hereby authorizing such and whichever of them as shall qualify, and the survivor and survivors of them to act in the like manner and with like effect as if they or he alone had been named, as such executor, and *during the life-time of my said husband,* my said executors, and such and whichever of them as shall act are authorized and empowered, *by and with the consent of my said husband,* to sell and dispose of any part of my estate, real and personal, not specifically bequeathed," etc. If the two expressions we have italicized belong together, and have been separated by accident or mistake ; if they may be brought together by transposition, and if then they may be inclosed in brackets and read parenthetically, the construction of the courts below will be reached, and what seems inevitably to have been the purpose and intention of the testatrix will be preserved. The material part of the clause in question would then read thus, viz.: " and my said executors, and such and whichever of them as shall act are authorized and empowered (*during the life-time of my said husband, by and with the consent of my said husband*) to sell and dispose of any part of my estate, real and personal," etc. If such was the real meaning and intention of the testatrix ; if an examination of the whole will forces that conviction ; if its plain and definite purposes are endangered by inapt or inaccurate modes of expression ; and we are sure that we know what the testatrix meant ; we have a right and it is our duty to subordinate the language to the intention. In such a case the court may reject words and limitations, supply them or transpose them, to get at the correct meaning. (*Pond* v. *Bergh,* 10 Paige, 140 ; *Drake* v. *Pell,* 3 Edw. 251 ; *Mason* v. *Jones,* 2 Barb. 229.) But we are to construe the will, not make it anew ; and the inquiry comes

whether in the case at bar the actual intention has been reached in the construction adopted.

The testatrix owned a large amount of real estate but only about $16,000 in personal property. She left surviving her, besides her husband, four sons and five daughters, all of age and all of the latter married, and one grand-daughter, the sole representative of a deceased daughter. This property she sought to dispose of for the benefit of this family by a will which is long, deliberate, and characterized by distinct and definite purposes. After the payment of debts she first provided for her husband. She gave all her property, real and personal, to her executors in trust, to rent, invest and improve the same, and apply the rents, issues, income, interest, dividends, and profits thereof to the use of her husband for and during his natural life. This trust and estate of the trustees was to end at the death of the husband. All that follows in the way of bequest or devise expressly and carefully relates to the situation and period after her husband's decease. There is first a specific devise of her house and lot in Thirty-fourth street, New York, to her daughter Rachel Moeller, together with the household furniture. Then comes a series of ten carefully constructed trusts for the benefit of the nine children and the grandchild Clara, in each of which the trustees named are different, and the sum of $25,000 is to be invested for the use of the selected beneficiary. These ten trusts required $250,000 from an estate having not enough of personal property to constitute a single one of them, and show conclusively the purpose and intention of the deceased to devote to them the proceeds of her real estate. Each of these ten trust estates is created and described by itself, and they disclose a definite aim in the manner of their creation. Taking the first as an example, we find that the beneficiary is Henry, while the trustees are his three brothers, Lewis, Asher and Isaac. The latter are required to invest the sum of $25,000 and apply the interest and income to the use of Henry during his natural life, and upon his death to pay the principal to his issue, or in default of such, to his surviving brothers and sisters, and the issue of such as may be dead.

For each of the sons the trustees were his three brothers; and for each of the daughters two of the sons and the husband of the beneficiary, while for the granddaughter Clara, the four sons were made trustees. The details of these ten trusts carefully wrought out occupy five printed pages of the case, and they evince a clear and definite purpose on the part of the testatrix to carry the bulk of her estate to her grandchildren and preserve it for them, safe from the possible waste or improvidence of the sons, or the control and possession of the sons-in-law. For the married daughters the trusts were important safeguards, and for the grandchildren the sole basis of their rights. It is quite clear that the testatrix did not intend to put the bulk of her property represented by these ten shares within the absolute control of the beneficiaries, and leave the grandchildren to the chances and accidents of their parent's success or failure, if there be nothing else in the will to modify our conclusion.

The next clause in the will is a bequest of $1,000 to each of her living grandchildren at the date of her death. How many there were we are not explicitly informed, but the papers in this case and in the action of partition submitted with it, indicate that at that period they were more than forty in number; the payment of their legacies alone requiring not less than $40,000, a sum for which the testatrix must have known the personal property was totally inadequate, and, therefore, must have considered her real estate as converted into money, and providing the source of payment.

There is then a devise to Priscilla Cohen, a sister-in-law, of a house and lot on Forty-first street. This property and that previously specifically devised to Mrs. Moeller became seriously incumbered before the death of testatrix, and caused the execution of a codicil. That instrument recites that the incumbrance upon the house and lot devised to Mrs. Moeller was about $20,000, and directs her executors to pay that off and also the incumbrances upon Mrs. Cohen's lot "from any money or assets that may come into their hands before making any other disbursements, or paying off any legacy." The personal estate was

utterly insufficient even to pay off these incumbrances, and when so applied, as far as it would reach, left the ten trusts and the legacies to the grandchildren utterly valueless and hollow. It is difficult to imagine that the testatrix deliberately contemplated such a result as possibly required by the language of her will.

Two additional trusts are then framed, in which the sons are made trustees and the beneficiaries are a sister, Mrs. Isaacs, and a sister-in-law, Mrs. Cowan. To the latter is given the income of $5,000, and to the former of $3,000, during their respective lives, with remainder over to the children of testatrix, except a moiety to the husband of Mrs. Cowan. These two life estates entirely fail if the real estate cannot be sold and its proceeds be applied, and as the sister and sister-in-law could take nothing by inheritance, we are driven to the difficult conclusion, upon the appellants' theory, that the testatrix really contemplated an emergency in which these provisions should be illusory and vain.

A similar result attends the charitable bequests that follow: $4,000 are distributed among four institutions of the Hebrew faith; gifts on paper without a dollar behind them; a deceptive pretense of charity; if in truth the donor contemplated a possible emergency carrying her real estate to her heirs. In the same condition are the bequests to Mrs. Meyer of $2,000; that to the sister Sarah of the use of $1,000; those to the nephews Maurice and Isaac Simmons of $1,000 and of $500 respectively; that to the Rev. Samuels M. Isaacs of $250; and that to Henrietta Wolff, " who was named after my deceased daughter Henrietta," of $250.

Three general provisions follow which assume and require a conversion of the real estate, and the management and control of its proceeds by the executors. The first requires that all investments to be made by her trustees shall be in bonds and mortgages or government bonds, or those of the State or city of New York. The second that if any of her children, grandchildren or god-sons should " marry out of the pale of the Jewish faith" their legacies should be revoked, and the party

so offending should have "$100 *only.*"   Was this intended as
merely an idle threat, and  did the testatrix contemplate that a
child so offending might yet, in one event, inherit one-tenth of
the whole estate, and enjoy and spend it among the Gentiles?
The third provision authorized the trustees, whenever she had
given them "property," to call in, alter and change invest-
ments.

Then comes a final disposition of all the rest, residue and re-
mainder of the estate, evincing a purpose to dispose of all her
property, and die intestate as to none.   The executors are
directed to divide such residue into ten  equal shares, and pay
them over to the trustees of the ten trusts for the benefit of the
nine children and the granddaughter Clara.   And then follows
the final clause relating to the power of sale, the construction
of which is to be determined.

Such is the will.   There is but one  possible answer  to the
inferences which its elaborate provisions force upon us.   That
answer is not without weight and is pressed with ability, and
with evident sincerity.   It is said that the testatrix intended to
condition the whole scheme of her will upon the consent of her
husband ; that unless he consented to a  sale, she meant that
her whole elaborate structure of  trusts, and legacies, and
charities, and conditions should crumble and be destroyed ; and
that the entire fabric was intended to be dependent upon his
word.   It is argued that exactly this the testatrix said, by a form
of words intelligent and not in the  least ambiguous, and that
we have no right to dislocate and torture her words into some-
thing which she did not say.   And then  the theory is sought
to be made more reasonable and less difficult of belief by the
suggestion that the beneficiaries in the ten trusts are identical
with the heirs at law who take by descent, and that what was
left dependent upon the choice of the husband was merely
whether the children and Clara should take absolutely or only
for life with remainder over.   But this suggestion takes no
account of other provisions which are sacrificed.   It overlooks
the specific gifts to each of the grandchildren, the failure to
pay off incumbrances, the total destruction of the life estates

of sister and sister-in-law, the lost or imperiled charities, the ineffectual penalty for departure from the Jewish faith, and the purpose by the gift of estates for life to her children of preserving the bulk of her property for the benefit of her grandchildren. We cannot believe the theory. It does violence to the whole testamentary scheme, contradicts its every declared purpose and all its careful and thoughtful intentions, and leaves it unsubstantial and deceptive. In view of its whole structure, as we study the power of sale conferred, we find it impossible to escape the conviction that the testatrix intended to confer upon her executors a power of sale extending beyond the life of her husband, during his life to be exercised by his consent, but thereafter continuing to exist, and rendering possible of performance the terms and conditions of the will.

The judgment should be affirmed, with the costs of all parties payable out of the estate.

All concur.

Judgment affirmed.