SOPHIA M. SHEPARD, PLAINTIFF, *v.* JOSEPHINE GASSNER AND OTHERS, RESPONDENTS.

*Will — when a trust expressed in ambiguous terms will be sustained.*

A testator gave and devised all his estate, real and personal, to his executors, " to have and to hold the same, to them and to the survivors and survivor of them during the lifetime of my wife Rachel, and during the lifetime of my daughter Josephine, in trust, to apply the rents, profits and income of the same to the use of my said wife Rachel, so long as she shall remain my widow, and in case she shall remarry, then to apply the sum of two hundred dollars to her use annually, free from the debts, control or interference of her husband and to apply the residue of said rents, profits and income to the use of my children now living, equally, and upon the death of my said wife Rachel, and of my daughter Josephine, to sell and divide the proceeds of my estate among my children then living, equally."

Upon the trial of this action, brought to have the trust declared void and the estate partitioned, it was decided that the only valid trust created by the will ceased at the death of the widow, and that the trust attempted to be created during the lifetime of the daughter was void.

*Held*, error; that the intention of the testator was that his estate should be held in trust during the lives of his wife and daughter, and that his executors should apply the rents and profits to the use of his wife as long as she should remain unmarried, and upon her death and during the life of his daughter Josephine to apply them to the use of his children then living, and upon the death of both to sell and divide the proceeds of his estate among his children then living.

That a valid trust to continue during the lives of the widow and the daughter, was created.

*Morse* v. *Morse* (85 N. Y., 53); *Phillips* v. *Davies* (92 id., 199) followed; *Cooke* v. *Platt* (98 N. Y., 35) distinguished.

MOTION for a new trial, under section 1001 of the Code of Civil Procedure, upon exceptions taken by the defendants to the report

and refusals to find of Ward Hunt, Jr., Esq., referee, to whom it had been referred to hear, try and determine all the issues in this action.

The action was brought to declare void the last will and testament of John B. Gassner, deceased, and the trusts and power therein contained, and for a partition and division of the lands of which the said John B. Gassner died seized, among the parties entitled thereto ; or in case the said trusts should be adjudged valid then that a trustee be appointed with such instructions relative to the rights of the several *cestuis que trust* as may be just, and also for an accounting.

There is no dispute as to the facts. They are admitted to be as found by the referee and contained in his report, and so far as material to the questions now before the court are as follows : John B. Gassner died in the city of New York, June 12, 1856, seized in fee simple of the premises known as No. 76 Grand street, in said city, and Nos. 277 and 279 Bank street, in the city of Newark, New Jersey, and leaving him surviving Rachel Gassner, his widow, and his only heirs-at-law his daughters, the plaintiff Sophia M. Shepard, and the defendants Josephine Gassner, Almira Gassner, Louisa Gray, Adelaide Betts, Elizabeth V. Smith, and Ellen Gassner, Rachel Gassner and Mary Gassner, and his grandson John G. Nestle, the only son and heir-at-law of Caroline Nestle, a deceased daughter of said John B. Gassner, deceased, who had died intestate prior to the death of her father.

Two of said daughters, Rachel and Mary, died intestate and without issue, subsequent to the death of their father, and during the life of the widow. The widow died February 13, 1874, and the daughter Ellen died intestate, and without issue, about a year subsequent to her mother's death. Peter Gassner, a son of John B. Gassner, died intestate, and without issue, in 1845, and Mrs. Lyon, a daughter, died intestate, and without issue, in 1853. The said John B. Gassner had no other children than those above named, all of whom are now living, except those whose deaths have been specifically stated.

The said John B. Gassner, deceased, also left a last will and testament, which has been duly admitted to probate by the surrogate of the county of New York, the second clause of which is as follows :

"*Second.* I give, devise and bequeath all my estate, real and personal, of every nature and kind, to my executors hereinafter named, to have and to hold the same, to them and to the survivors and survivor of them during the lifetime of my wife Rachel, and during the lifetime of my daughter Josephine, in trust, to apply the rents, profits and income of the same to the use of my said wife Rachel, so long as she shall remain my widow, and in case she shall remarry, then to apply the sum of two hundred dollars to her use annually, free from the debts, control or interference of her husband, and to apply the residue of said rents, profits and income to the use of my children now living, equally, and upon the death of my said wife Rachel, and of my daughter Josephine, to sell and divide the proceeds of my estate among my children then living, equally."

The testator's daughter Josephine, mentioned in the foregoing will, is the defendant Josephine Gassner herein, and is still living. His wife Rachel survived him as above stated, but died February 13, 1874. Letters testamentary upon said will were issued by the said surrogate to Peter Gassner, one of the executors therein named, who duly qualified as such and entered upon the execution of his trust. Neither of the other executors named in said will ever qualified as such or entered upon the execution of their trust. Peter Gassner, the executor who qualified, died in 1859, and the other two died prior to the commencement of this action. No other executors or trustees of or under said will have ever been appointed.

The referee, before whom the action was tried, found and decided, among other things, that the trust created by said will during the life of Rachel Gassner, the testator's widow, was a good and valid trust within the Revised Statutes, so as to vest the legal title in the trustees during her life, but that the trust attempted to be created by said will, subsequent to the death of the widow and during the life of the daughter Josephine, is not a good and valid trust; that no estate or power vested in said executors, or in the court, which continued after the death of the widow; that the only valid trust created by said will ceased at the death of the widow; that the estate and power which were originally vested in the executors, and subsequently vested in the court, ceased at the same time; that upon the death of the widow the legal title to said real estate vested in the daughters then living, equally, as tenants in common; that upon

the death of the daughter Ellen, in 1875, her share of said estate being an undivided one-seventh part thereof, vested in her surviving sisters and in the defendant, John G. Nestle, as tenants in common ; that the said real estate is now held and owned by the said parties as tenants in common ; and that the plaintiff is entitled to a judgment of partition or sale of the real estate within the State of New York, in accordance with the rules and practice of the court. Upon said report an interlocutory judgment was entered September 25, 1885, adjudging the rights and interests of the parties in accordance therewith, and directing a sale of said premises by Joseph P. Fallon, Esq., as referee.

No proceeding or hearing has been had under said interlocutory judgment, and the defendants now move for a new trial of this action as stated above.

*Dorwin & Brown,* for the plaintiff.

*Emil S. Arnold* and *John W. Pirsson,* for the defendants.

Brady, J. :

The learned referee was requested to determine whether or not that part of the second clause of the will is valid, which purports to impress the property with a trust subsequent to the widow's death and during the life of the daughter Josephine. He said that the question arose because of the fact that the will made no disposition whatever of the rents and profits of the estate during that period. He said that in a multitude of cases the courts have construed words and phrases to meet the general scope of a will, although the plain language may be quite contrary, standing alone, to the construction thus given. But he thought that in this case there was neither word nor phrase which the court could construe or from which it could construct a theory of intention. He thought, also, that it was altogether probable as the defendants claim that the omission referred to was clerical merely, but he regarded it as fatal and felt constrained to hold that the attempted creation of a trust during Josephine's life failed in its object. This view does not seem to be justified by a proper interpretation of the second clause. The manifest intention of the testator to be gathered from the clause itself and justified by its language, is that his executors were to hold his estate during the lifetime of his daughter Josephine, in

trust, for the uses expressly declared. The expression of this intention is not accomplished by a union of those names, but by a separate statement as to each, the trust being to apply the rents, profits and income to his wife Rachel as long as she should remain his widow, and upon the death of his wife and his daughter to sell and divide the proceeds of his estate among his children, then living, equally. But if his wife Rachel should intermarry, she was to receive, not the income of his estate, but an annuity of $200 only, and the executors were to apply the residue of the rents and profits to the use of his children then living. In other words he said : " I wish my estate held during the lives of my wife and daughter and that my executors shall apply the rents and profits to the use of my wife as long as she shall remain unmarried, and upon her death and during the life of my daughter Josephine to apply them to the use of my children then living, and upon the death of both to sell and divide the proceeds of my estate among my children then living, equally." This view is based upon the testator's declaration that the trust shall extend during the life not only of his wife, but of his daughter Josephine. The provision as to the annuity of $200 in case of his wife's remarriage was a partial abrogation of the trust, leaving a fund in excess which was to be distributed between the children, and as the trust was to continue, namely, to apply the rents, issues and profits, it may under such circumstances be fairly inferred that in case of the death of Rachel the same disposition was to be made of the income. It is not necessary to constitute a valid trust that it shall be stated in the precise words of the statute. It is sufficient if the intention to create it can be fairly collected from the instrument and what is implied by the language used, as suggested by the learned counsel for the defendant. This view is sustained by the case of *Morse* v. *Morse* (85 N. Y., 53), in which case it was held that although there was no express direction in the will as to the disposition to be made of the rents and profits, nevertheless it would be implied that they were to go to the persons interested in the estate ; and it was said that though the will did not expressly authorize the executor to receive the rents and profits, yet the power to rent and lease carried with it the power to receive the rents accruing from its execution. (See, also, *Vernon* v. *Vernon*, 53 N. Y., 353 ; *Robert* v. *Corning*, 89 id., 236.)

In *Phillips* v. *Davies* (92 N. Y., 199) it was held that where, upon examination of a will taken as a whole, the intention of the testator appears clear, but its plain and definite purposes are endangered by inapt or inaccurate modes of expression, the court may and it is its duty to subordinate the language to the intention ; it may reject words and limitations, supply or transpose them to get at the correct meaning.

The case of *Cooke* v. *Platt* (98 N. Y., 35), which seems to be in conflict with these views, is not so, however, as appears upon examination ; because, in that case, there was no direction whatever to apply the rents and profits to the use of any person, for it was not the intention of the testator that the rents and profits should be distributable as such, but that they should be incorporated in the mass of the estate. Here the testator directs the application of the rents and profits during the life of the widow, and also in the event of her remarriage, and he undoubtedly intended that the application of the rents and profits should continue during the lifetime of his daughter Josephine, because the trust made is in connection with such distribution and evidently intended to be covered by it.

The discussion of this question might be extended *ad libitum* by a reference to the multitudinous adjudications bearing upon questions analogous and kindred. But it is considered that it would be entirely unnecessary, for if the intention of the testator can be ascertained from the instrument, on very well established principles, it must prevail. The rule is founded upon common sense, the doctrines of natural justice and the determination to dispose of the estate as the owner intended should be done. Any rule to the contrary by which the design of the testator in the disposition of his property is frustrated would be an antagonism to any one of those principles and could not be sustained.

Courts have no power, and it is trusted, have no disposition to make wills, and although in consequence of ambiguities arising from ignorance of the law of uses and trusts, and sometimes from infelicities of expression, they are called upon to construe and interpret wills, and may, in the exercise of that duty, mistake the intention of the testator, nevertheless it is the best that can be done under the circumstances in the administration of the law. Having

arrived at the intention of the testator, and assuming the views expressed on that subject to be correct, the duty of the appellate court is performed.

The judgment should be reversed.

DANIELS, J., concurred.

Judgment reversed.