These views, as well as those expressed by us when the case was last before us, in the opinion reported in 7 N. Y. St. Rep. 598, lead us to sustain the order and verdict. Judgment and order affirmed, with costs.

MARTIN and MERWIN, JJ., concur.

---

### GREENE *v.* GREENE *et al.*

(*Supreme Court, Special Term, Erie County.* February 6, 1889.)

1. WILLS—CONSTRUCTION.
   A testator, after making various bequests, appointed three of his sons executors of his will and trustees of his estate, and declared that "I direct that my said trustees shall take and hold my said property and estate, and the whole thereof, except said Ohio tracts, for a period of six years from and after my decease;" and "at the expiration of the said six years the rest and residue of my estate, real and personal, * * * shall belong to my said sons, * * * share and share alike." There was also a clause forbidding partition of the estate "so devised and bequeathed to my three sons in trust, as aforesaid, until the expiration of six years;" and "that, in case either of said three sons" shall attempt to partition or divide the land, he shall forfeit all claim to the estate. In authorizing the sale of other land besides that in controversy the authority was given to "my trustees," but in the last clause of the

will authority to mortgage the land in controversy was given to "my three sons," who are not referred to as trustees. The contingency of the death of either of the three sons, before the expiration of six years, was not provided for. *Held*, that it was not the intention of testator to attempt to suspend the power of alienation, in violation of the law against perpetuities, but that it was his intention that the title to the lands should immediately vest in the three sons named, subject to the payment of specific legacies.

**2. SAME.**

A will should be construed as a whole, and so as to prevent intestacy; and all of its provisions should be upheld, unless by so doing violence is done to the reasonable intention of the testator; and where that intention is clear, though some of the expressions are inaccurate and apparently inconsistent, it is the duty of the court to subordinate the language to the plain purpose of the testator.

**8. PARTITION—BY WHOM MAINTAINABLE.**

Code Civil Proc. N. Y. § 1537, provides that one claiming as a joint tenant or tenant in common, by being heir of one who died, holding and in possession of land, may sue for partition thereof, though not in possession, and notwithstanding an apparent devise to another. *Held*, that as plaintiff claims as heir of his mother, and not of his father, who died in possession of the land in controversy, he is not relieved from the common-law rule that, to maintain partition, plaintiff must be in actual or constructive possession of the land.

On action for partition.

Action by William B. Greene against John B. Greene and others, heirs of William H. Greene, deceased, for partition of two pieces of land, plaintiff claiming the undivided one-fifth of one piece as heir of decedent, his father, and one-fifth of the other piece by virtue of an antenuptial agreement executed by his father to trustees, for the use of plaintiff's mother during her life, and the remainder in fee to the heirs of her body. The will of William H. Greene was executed in 1881. He had been twice married. By his first wife he left five children, William B., John ·B., Keturah B., Harry B., and Samuel B. There were no children of the second marriage, and his second wife survived him. His will contained 16 clauses, some of which appeared to be contradictory, or of doubtful meaning.

*T. M. Tyng, George Wing,* and *Daniel G. Rollins,* for plaintiff. *James C. Beecher* and *Sherman S. Rogers,* for defendants.

LEWIS, J. The importance of this case demands that I should state the reasons for my conclusions. My time has been so occupied with other engagements since the submission of the case to me that I shall be compelled to state them briefly. In reaching the conclusion that the will of Mr. Greene is valid, I have been obliged to make very free use of the doctrine laid down in the opinion of Judge FINCH in *Phillips* v. *Davies,* 92 N. Y. 204, to-wit: If the plain and definite purposes of a will are endangered by inapt or inaccurate modes of expression, and we are sure that we know what the testator means, we have the right, and it is our duty, to subordinate the language to the intention. We may reject words and limitations, supply them, or transpose them, to get at the correct meaning. This will should be construed so as to uphold all of its provisions, unless in doing so violence is done to the natural and proper meaning of its provisions. It is clear that it was the testator's wish that the land in controversy should ultimately go to his three sons, John B., Harry B., and Samuel B. This is not controverted by the plaintiff. His contention is that the lands devised to the three sons was a future estate, limited to come into their possession at the expiration of six years from and after the death of the testator, and that during this period of six years the title was in them as trustees. If this is a correct construction of the will, then it is unquestionably void, so far as the land in controversy is concerned, as violative of the laws against perpetuities. The testator was a lawyer of long and large experience, and it would be quite remarkable if he was not familiar with the statute relating to the suspension of the power of alienation. I think I must assume that a lawyer of 40 years' standing could not have been ignorant of this law, although it is quite surprising, if he had the stat-

ute in mind when he was preparing his will, that he should have couched it in the language he did. It would seem, in reading that portion of the will which declares "it to be my will, and I direct, that my trustees shall take and hold my said property and estate, and the whole thereof, except said Ohio tracts, for the period of six years from and after my decease," and again, in the fifteenth clause, "at the expiration of said period of six years the rest and residue of my said estate, real and personal, remaining after the payment of said legacies and debts, shall belong to my said three sons, John B. Greene, Harry B. Greene, and Samuel B. Greene, share and share alike, their heirs and assigns, forever," that it was his intention to vest the title during that period in his trustees, and suspend the power of alienation for that time. But, when read in connection with the balance of the will, I think that such was not his intention, but that he intended that the three sons named should enjoy the rents, issues, and profits of the property during the six years, subject to the payment of the specific bequests. He had provided for the payment of legacies amounting to some $115,000. His personal estate, he believed, was sufficient, with prudent management, to pay the legacies, without resorting to the real estate. But, for fear that it might not be sufficient, he required that, if necessary, the rents and profits of the land should be applied to the payment of the specific legacies. He provided in his will for the care and support of his widow and daughter, by specific bequests. His three sons were then young. Two of them were living with him; and, while they were lawyers, they were dependent for their support, partially, at least, upon the estate of their father. And, unless he intended that the rents and profits of the real estate devised to them should, after the payment of the specific legacies, be used for their support, he made in his will no provision for them for the six years after his decease, and at the time in their life when he must have known they would need the use of his property for their support. He provided in the fourteenth clause that, "after the payment of said legacies, the said property and estate shall be managed for the joint benefit of my said three sons, John, Harry, and Samuel, who shall annually render to each other a just and full statement of the rents, issues, and profits, and all transactions relating to said property and estate;" indicating, it would seem, that he expected that after the payment of the legacies they were entitled to the rents and issues of the property for their support.

The real estate consisted of a valuable lot upon Main and Washington streets, covered by valuable buildings, producing large revenue in the way of rents. It was evidently a desire of the testator that this property should be retained by the three sons, without any division thereof. He gave them, as trustees, power to sell, convey, and dispose of any of the real estate not specifically devised, on condition that the proceeds of such sale should be retained by them, unless it became necessary to use the same for the purpose of paying off the legacies. It would not seem that a lawyer of his experience would have provided so serious a penalty for an attempt to partition the property in question during the six years mentioned in his will, if he understood the title was for that period in trustees. If, however, it was his intention that the title should immediately vest in them, subject to the payment of the specific legacies, it was natural for him to wish to restrain a partition thereof for the period named. Again, no provision is made in the will for the contingency of the death of the three sons, or either of them, during the six years. If he intended that the title should not vest in them until the end of the six years, and he had given the situation any reflection, he would have made provision for the contingency of the death of either or all of the sons; and it is very improbable that he would purposely leave any portion of his property thus undisposed of. Mr. Greene states in his explanatory and qualifying clause that he did not think it would become necessary to mortgage the lands in question in order to carry out the provisions of his will, but he provides that, should

it become necessary, his three sons should have power to mortgage the real estate. He does not give them, as trustees, power to mortgage it, but as sons. In providing for the sale of other real estate besides that in controversy, he empowered them as trustees to sell. Had he intended that this property should vest in them as trustees during the six years, he would have authorized them as trustees to mortgage it for the purpose of obtaining money to pay the bequests. By the unfortunate use of words in this will, serious doubts arise as to its true construction, but I think, taking it as a whole, such a construction can be given to it as will uphold it, and prevent intestacy as to the land in question.

I am not satisfied from the evidence that the plaintiff was sufficiently aware of his rights and interests in the premises under the will, so that the doctrine of election should be applied to him. There is no question as to the execution of the antenuptial agreement. The only question is as to its delivery. I think the presumption of its delivery, arising from the record thereof, is not disposed of by defendants. Mr. Greene was residing upon the lot secondly described in the complaint after the delivery of the antenuptial agreement with his wife and children, and I do not think his possession can be held to be adverse to the plaintiff. Certainly, from the evidence, not for such a length of time to bar the plaintiff from maintaining an action. The antenuptial agreement was executed and delivered in the year 1845. The deceased married his first wife soon thereafter, and resided upon the property described in the antenuptial agreement down to the year 1874. All of his children were born there, and two years after the death of his first wife he married again, and resided upon this property with his second wife and his infant children, the youngest of them arriving at maturity in the year 1876. But, as to the lot described in the antenuptial agreement, the plaintiff was not, at the time of the commencement of this action, in a situation to maintain partition. He had not resided upon the property for many years. His father assumed by his will to devise it to his three younger sons, and they, upon the death of the father, entered into possession of it, claiming to own it; denied and repudiated any claim of the plaintiff thereto; and there cannot be any question but at the time of the commencement of his action it was held by them adversely to the plaintiff.

The plaintiff rests his right to maintain this action upon section 1537 of the Code of Civil Procedure, which reads as follows: "A person claiming to be entitled, as a joint tenant or a tenant in common, by reason of his being an heir of a person who died holding and in possession of real property, may maintain an action for the partition thereof, whether he is in or out of possession, notwithstanding an apparent devise thereof to another by the decedent, and possession under such a devise. But in such an action the plaintiff must allege and establish that the apparent devise is void." This section does not afford the plaintiff relief from the common-law rule that, to maintain partition, the plaintiff must be actually or constructively in possession. His interest in this lot came to him upon the death of his mother by virtue of this antenuptial agreement. He did not inherit it from his father. The Code so far changes the common law as to permit partition in a case where the plaintiff claims to be an heir of a person who died holding and in possession of real property, even if out of possession, notwithstanding an apparent devise by the person whose heir plaintiff claims to be, provided he can establish the devise to be void. The decedent mentioned in this section is the person who died holding and in possession of real property. The mother of the plaintiff, and not his father, was the person who died holding possession of the real property. The plaintiff cannot try the question of his title in this form of action, except in a case provided for by this section of the Code. The rule of the common law was first changed by the act of 1853, which provided that "any heir or heirs claiming lands, tenements, or hereditaments by descent

from an ancestor, who died holding and being in possession of the same, (whether such heir or heirs be in possession or not,) may prosecute for the partition thereof, notwithstanding any apparent devise by such ancestor, and any possession held under the same devise, provided that such heir or heirs shall allege and establish in the same suit,   *   *   *   that such apparent devise is void." The provision of the Code which superseded this act is, in effect, the same, although its meaning is not as clear, as the act of 1853.

My conclusion is that this provision of the Code does not reach the plaintiff's case. Not being actually or constructively in possession of the land at the time of the commencement of this action, he cannot maintain partition. The plaintiff's complaint must be dismissed, but, in view of the uncertainty and ambiguity of the will, it should be dismissed, without costs.