## GULICK v. GRISWOLD.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

POWERS—RIGHT TO SELL REALTY—TERMINATION.

Where testator leaves his realty to his wife and daughter, and to the survivor of them, for life, and empowers the daughter, "with the consent of her mother," to sell the property and to reinvest the proceeds, and the mother dies before consenting to a sale, the power to sell terminates with the mother's death.

Submission, without action, of controversy between Mary E. Gulick, executrix of Isaac F. Jones, deceased, as plaintiff, and John Griswold, as defendant. Judgment for defendant.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

J. C. Gulick, for plaintiff.
H. A. Shipman, for defendant.

VAN BRUNT, P. J. The plaintiff's testator, Isaac F. Jones, died on or about the 23d of December, 1870; being then a resident of the city and county of New York, and seised of certain premises on the north side of Twenty-Second street, between Eighth and Ninth avenues. He left, him surviving, his widow, the plaintiff (his daughter), and two grandchildren, daughters of his deceased son. All these parties are now of full age. The testator left a last will and testament, which has been duly probated and recorded in the office of the surrogate of the county of New York. By this will, after directing the payment of his debts and testamentary charges, and certain specific bequests, he gave all the rest, residue, and remainder of his estate, both real and personal, to his wife, Mary Ann Jones, and his daughter, Mary Elizabeth Jones, and to the survivor of them, to be used and enjoyed by them, share and share alike, during their natural lives; and upon the death of the survivor he devised and bequeathed the same to certain other persons named in the will. The fourth clause of the will was as follows: "I hereby authorize and empower my executrix hereafter named, if, in her judgment, she deems it expedient, with the consent of her mother, to sell all or any of my real estate, at public or private sale, and, in the event of a sale," to invest the proceeds, etc. He then nominated his daughter, Mary E. Jones, the executrix of his will. Mary A. Jones, the widow, died on the 23d of

August, 1875. On the 4th of April, 1896, the plaintiff, as executrix of the will of her father, sold the premises above named to the defendant. The defendant refused to take title, on the ground that the assent of the testator's widow was a condition precedent to the exercise of the power of sale. The controversy thus arising has been submitted to the court for judgment as to whether the defendant should be directed specifically to perform his contract, or whether he should have judgment for the return of his deposit, upon the ground that the plaintiff is unable to convey a good and marketable title to the premises in question.

It is urged upon the part of the plaintiff that the consent of the widow was only necessary during her life; the restriction upon the power of sale being for the personal benefit of the widow alone, and the necessity for the limitation, upon her death, no longer existing. And to uphold this construction our attention is called to the cases of Phillips v. Davies, 92 N. Y. 199, and Mott v. Ackerman, Id. 539. In the case of Phillips v. Davies the testatrix, at the time of making her will and at her death, owned a large amount of real estate, but only a small amount of personal property. By her will, after directing the payment of her debts, she first provided for her husband; giving all her property, real and personal, to executors in trust to apply the rents, issues, and profits thereof to the use of her husband for life. This trust and estate of the trustees was to end at the death of the husband, and all that followed in the way of bequest and devise expressly and carefully related to the situation and period after her husband's death. She devised certain real estate specifically, and then created ten separate and independent trusts, consisting of sums of money to be invested for the use of the selected beneficiaries. The personal property was not sufficient to establish any single one of these trusts. Then follow bequests of sums of money to legatees, which would more than twice over have exhausted the personal estate, and the devise of a house and lot; reciting an incumbrance thereon, with direction to the executors to pay the same. This incumbrance the personal estate was utterly insufficient to meet. Two additional trusts were then framed, of different sums of money, and the will then made certain charitable bequests. Then follow three general provisions which assumed and required the conversion of the real estate, and the management and control of its proceeds by the executors. Then comes the final disposition of all the rest, residue, and remainder of the estate; evincing an intention upon the part of the testatrix to dispose of all her property, and to die intestate as to none. The executors are directed to divide such residue into ten equal shares, and to pay them over to the trustees of the ten trusts for the benefit of her nine children and her granddaughter. Then follows the clause appointing the executors, which contains a power of sale as follows:

"And, during the lifetime of my said husband, my executors, and such and whichever of them as shall act, are authorized and empowered, by and with the consent of my said husband, to sell and dispose of any part of my estate, real and personal, not specifically bequeathed."

The court held, under these circumstances, that the death of the husband did not terminate the power of sale, that such consent was only required during his life, and that the testatrix evidently intended that after his death the real estate should be converted into personalty, and be held in trust as such, and finally disposed of and paid over as such; the requirements of the will thus necessitating the existence of the power of sale after the death of the husband. In the case of Mott v. Ackerman the testatrix left a will by which she gave to her executors a power of sale, to be exercised during the life of her surviving sister, Maria, with her concurrence; and the will then proceeds, "On the death of my said sister, Maria, or as soon thereafter as they may think advisable, * * * and within three years from the proof of this will," the executors were empowered and directed to convert into money the real estate, etc. Maria lived more than three years after the proof of the will, and the court held that the power of sale still existed; that, as the purposes of the will required a sale, the power was imperative, and was so intended by the executrix; and that the neglect to sell during the time specified did not destroy the authority conferred. These cases, however, are very far from being authorities upon the construction of a will such as the one at bar. There is no intent disclosed by this will that any part of the real estate shall necessarily be converted into personalty. It simply confers authority upon the executrix, in case the other life tenant consents, to sell the real estate. There was no necessity for such sale to meet all the requirements of the will, and hence the will in question is clearly distinguishable from those in the cases cited. In the case of Barber v. Cary, 11 N. Y. 397, it is expressly held that, by the common law, where a power is to be exercised with the consent of third persons, the death of one of such persons rendered the exercise of the power impossible; that this rule of law had not been changed by the Revised Statutes; and that where land was devised to a son for life, and then to his heirs, with power to him to sell and convey the same, by and with the consent of his mother and brother, and his mother died without consenting, and the son afterwards, with the consent of the brother, sold and conveyed the land, no title passed by virtue of the power. The rule above mentioned is also recognized in 2 Sugd. Powers, marg. p. 496, in which it is said that, where a power is to be exercised by and with the consent of a tenant for life, that is, of itself, a lawful limit; the very power points it out, and so far is good. In other words, the death of the life tenant, in such a case, terminates the right to exercise the power. It seems to us, therefore, that upon the death of the mother, whose consent was necessary for the exercise of the power of sale, the right to sell terminated.

The defendant should have judgment for the amount of the deposit, interest, and costs. All concur.