---

(33 Misc. Rep. 274.)

### In re WHITING et al.

(Surrogate's Court, Westchester County. December, 1900.)

1. WILLS—CONSTRUCTION—RESIDUARY CLAUSE—RIGHT OF LEGATEES.

Where it was evident from testator's entire will that he intended to devise all of his property, a provision that, in the event his property should not aggregate a sufficient sum to pay all legacies, the legatees should share pro rata in the increase or decrease of the same, will be transposed and rewritten by the court to read: "In the event of my property aggregating a sum more or less than sufficient to pay the legacies, then the legatees are to share or suffer pro rata in the increase or decrease of the same;" and hence the general legatees were entitled as residuary legatees under such residuary clause as rewritten, to share pro rata in the excess of the estate over the amount required to pay the specific legacies.

2. SAME—LEGATEES—RIGHT TO SHARE IN RESIDUARY ESTATE.

Testator devised $200 each to S. K. and C. K., as directed to be paid by the will of testator's mother, and further provided a number of specific legacies in favor of other parties. Held, that S. K. and C. K. were not entitled to share in testator's residuary estate, which was devised pro rata to his general legatees, since they cannot be regarded as legatees, but the devise to them must be considered as the fulfillment of a moral obligation to testator's mother.

3. SAME—GENERAL LEGATEE—OPTION.

Testator directed his executor to pay a mortgage on the property of M. W., and to satisfy the lien of record, and gave the husband of M. W. an option to take the same amount in money. Held, that M. W. was entitled as a general legatee to share in testator's residuary estate, which was devised pro rata to his general legatees.

4. SAME—LAPSED LEGACY—SHARE IN RESIDUARY ESTATE—INTESTACY.

Testator devised a certain sum to S. K., to be paid to her when she became 25 years of age, and, in case of her death before reaching that age, the amount should go to testator's heirs at law. Testator provided that his residuary estate should pass pro rata to his general legatees. S. K. died before reaching 25 years of age. *Held* that, S. K. being one of the residuary legatees, and her share in the residuary estate having lapsed with her legacy, such share did not pass pro rata to testator's general legatees, but to his heirs at law; but as to such part of his residuary estate testator died intestate.

Petition for the settlement of the account of Charles R. Whiting and another as executors of the estate of William H. Whiting, deceased.

John Gibney, for executors.
Smith Lent, for Mary Whiting.
Milton C. Palmer, for Thomas J. Whiting and others.
Frank L. Young, special guardian, for Skerritt minors.

SILKMAN, S. The testator, after the direction for the payment of funeral expenses, debts, and for the erection of a fence around cemetery plot, provides in his will as follows:

"To Stella Krause and Charles Krause the sum of two hundred dollars each, as directed to be paid by my mother's will, with interest from my death, unless I shall make a special deposit for them of said moneys before my death in the Sing Sing Savings Bank. To my sister Mary J. Flynn the sum of one thousand dollars. To my sister Sarah Skerritt the sum of two thousand dollars. To George W. Whiting the sum of five hundred dollars, my brother. I order and direct my executors to pay whatever mortgages or liens there may be against the house and lot belonging to Mary Whiting, wife of my brother Edwin T. Whiting, situate in Highland avenue, in the village of Sing Sing, which I hear is about sixteen or eighteen hundred dollars, and take and file a satisfaction of said liens or mortgages. To Stella Krause the sum of two thousand five hundred dollars when she becomes twenty-five years of age, the same to be invested for her, and the income paid to her for her support and maintenance, or part of said principal may be applied for that purpose, if necessary. To Charles Krause the sum of one thousand dollars, to be paid to him when he is of the age of twenty-five years, the same to be invested, and the income of the same or any part of the principal to be applied to his care and support. And, should either Stella or Charles Krause die before twenty-five years of age, his or her legacy or both shall be paid equally to my sisters and brothers or their heirs at law. To Emma Flynn, my niece, the sum of five hundred dollars at twenty-one years of age; to Lizzie Flynn, my niece, the sum of one thousand dollars at twenty-one years of age,—the aforesaid moneys to be invested for the said Emma and Lizzie Flynn, and income applied for their care or support, or part of the principal, if necessary. It is my will that none of my estate or moneys shall vest in the children of my brother James Whiting, deceased, whatever, notwithstanding the former clauses of this will. I also give the option to my brother Edwin of having a mortgage paid off on his wife's house or of paying the said sum to his wife, Mary Whiting, of eighteen hundred dollars. In the event of my property not aggregating a sufficient sum to pay said legacies aforesaid, they are to share pro rata in the increase or decrease of the same. Also any one of the said beneficiaries under this will who will contest the same, his or her share to go to the others share and share alike."

Sarah Skerritt, one of the legatees above named, died prior to the testator, and the legacy to her consequently lapsed. The accounts show that the testator left more than enough property to pay all the legacies, including that to Sarah Skerritt. The question is, how this surplus, including the amount of the lapsed legacy, which would pass

under the residuary clause, is to be distributed. Is there a residuary clause here? The language of the testator is, "In the event of my property not aggregating a sufficient sum to pay said legacies aforesaid, they are to share pro rata in the increase or decrease of the same." The draftsman of this will was very unfortunate in the use of words and modes of expression. The grammatical construction must certainly be discarded in arriving at the intention of this testator, and it is our duty to do so, in order that his intent may be accomplished, if it is possible, without doing violence to the structure of the will itself. The intent is to be gathered from the whole scheme of the will, and not from isolated sentences. The testator is presumed to have had in mind the extent of his property, and to have intended to dispose of it all, and we must, therefore, give such a construction as will prevent intestacy, if possible. It has been said that:

"If the plain and definite purposes of a will are endangered by inapt or inaccurate modes of expression, and we are sure we know what the testatrix meant, we have the right, and it is our duty, to subordinate the language to the intention. In such a case, the court may reject words, supply them, or transpose them, to get at the correct meaning." Lathrop v. Lathrop (Sup.) 18 N. Y. Supp. 652; Phillips v. Davies, 92 N. Y. 199.

Again, it has been said that:

"At the threshold of every suit for the construction of a will lies the rule that the court must give such construction to its provisions as will effectuate the general intent of the testator as expressed in the whole instrument. It may transpose words and phrases, and read its provisions in an order different from that in which they appear in the instrument, insert or leave out provisions if necessary, but only in aid of the testator's intent and purpose; never to devise a new scheme, or to make a new trial." Tilden v. Green, 130 N. Y. 42, 28 N. E. 884, 14 L. R. A. 40.

The testator here makes no specific reference to the residue of his estate. It is, however, not necessary to use any particular mode of expression to constitute a residuary legatee. It is sufficient if an intention is disclosed that the surplus of the estate after the payment of debts and legacies shall be taken by any particular person or persons. Bearing in mind that the testator is presumed to have intended a disposition of his entire estate, how are we to construe the sentence: "In the event of my property not aggregating a sufficient sum to pay said legacies aforesaid, they are to share pro rata in the increase or decrease of the same." Grammatically, this sentence borders upon the ridiculous. Nevertheless, we can see a meaning expressed by an untutored mind in the language used, namely, that the legatees were to suffer pro rata in case the estate was insufficient to pay all the legacies, and to share pro rata in case the estate was more than sufficient. It was unnecessary for him to provide for the former, because the law would have taken care of that. It was necessary for him to provide for the latter, or be guilty of an intestacy. I think it does no violence to the structure of the will to transpose and rewrite this sentence as follows: "In the event of my property aggregating a sum more or less than sufficient to pay the legacies aforesaid, then the legatees are to share or suffer pro rata in the increase or decrease of the same." Reforming the sentence in this way, it gives meaning to the apparently unmeaning, and creates testacy where intestacy would otherwise result.

The question next to be determined is whether Stella Krause and Charles Krause, who are given the sum of $200 each, are to share in the residuary estate by reason of such bequests. I think not. These sums of $200 each are not paid by reason of the testator's bounty, but owing to some direction of testator's mother, and are apparently a legal or moral debt of the testator. I do not think, from the language used, that he regarded them as legatees who were to benefit under the residuary clause.

We now come to the provision in favor of Mary Whiting. This is not the ordinary general legacy. It might be said it is more in the nature of a specific or demonstrative legacy, while strictly neither. It is a direction to pay a debt of another, and to cause a lien to be satisfied of record. Nevertheless, the option is given to testator's brother Edwin to convert the direction to pay the mortgage debt into a general legacy of $1,800. I should be inclined to the view that, were it not for this option, Mary Whiting could not be regarded as a legatee, entitled to take under the residuary clause, for the reason that the direction to discharge a mortgage and cause its cancellation would have to be regarded as a preferred gift, in order to effectuate the clear intention of the testator, namely, a discharge of the lien. The legatee would not, therefore, suffer by reason of an insufficiency of assets, and, as she could not suffer, it could not fairly be said that she should share in any surplus. The exercise of the option by Edwin that his wife shall take a legacy of $1,800 changes the situation, and brings her within the class who are to take the residuary estate. The testator must have contemplated that the exercise of this election would make her a general legatee, and, as such, entitled to share in any surplus. This view is strengthened by the fact that the clause providing for the right to an election immediately precedes the clause relating to the sharing of the legatees in the increase of the estate, and is part of the same paragraph.

One further question remains to be considered. The legacy of $2,000 to Sarah Skerritt, as has been said, becomes lapsed, and, under the authorities, passes under the residuary clause. Now, as we have construed the residuary clause to make the general legatees the residuary legatees, in proportion to the amount of their legacies, we have Sarah Skerritt as one of the residuary legatees; and, while the lapsed legacy to her passes under the residuary clause, her share in the residuary estate cannot so pass. It is a residue of a residue, and as to this it must be adjudged that the testator died intestate. Kerr v. Dougherty, 79 N. Y. 327; Booth v. Baptist Church, 126 N. Y. 245, 28 N. E. 238; Beekman v. Bonsor, 23 N. Y. 312; Floyd v. Carow, 88 N. Y. 570. The estate must, therefore, be distributed upon the following plan: Take the aggregate of the general legacies,—$10,300,— the surplus would then be divided in the following proportions: Mary J. Flynn, $10/103$; George W. Whiting, $5/103$; Mary Whiting, $18/103$; Stella Krause, $25/103$; Charles Krause, $10/103$; Emma Flynn, $5/103$; Lizzie Flynn, $10/103$; and to the next of kin of the testator, being the residue of the residue which would have gone to Sarah Skerritt, $20/103$.

Decreed accordingly.