(28 Misc. Rep. 666.)

### MILLER v. RICCI et al.

(Supreme Court, Special Term, New York County.    August, 1899.)

WILLS—CONSTRUCTION—ADVANCEMENT.

A father, by an antenuptial agreement, made in contemplation of his daughter's marriage, charged certain of his property with an obligation to pay to the daughter during her life the interest on a certain sum, and to pay the principal of such sum to her issue on her death. A few years afterwards the father executed his will, by which he provided for the ultimate division of his estate equally between his children, but directed that the principal sum with which his estate had been charged by the antenuptial contract should be deemed an advancement to the daughter, and deducted from her share of the estate disposed of by the will. After the father's death, the daughter died testate, but leaving no issue, and hence the obligation created by the antenuptial agreement as to the principal sum never became payable. *Held*, that the provision of the will treating such sum as an advancement to the daughter was made in the evident expectation that it would become payable, and, the obligation having been discharged without payment, that it was not the testator's intention that the sum should be deducted from the daughter's share and fall into the body of his estate.

Action by George H. Miller, as trustee, against Francesco Ricci and others for the construction of a will.

Julien T. Davies and Charles Francis Stone, for plaintiff.

Leavitt J. Hunt, for defendants Julia Miller and others.

F. R. Coudert, Jr., and Charles Frederic Adams, for defendant Ricci.

RUSSELL, J.    The interest of the defendant Francesco Ricci as executor and sole legatee under the will of his deceased wife, Emma Ricci, is the subject of contention in this action for the construction of the last will and testament of Edmund H. Miller, the deceased father of Mrs. Ricci.    Shall the sum of $34,000, the income of which Mrs. Ricci enjoyed during her married life, until her death, as provided by her father under the antenuptial agreement made in view of her proposed marriage to the defendant Francesco Ricci, but the principal of which she never received, be carved out of her share given by the will of her father, Edmund H. Miller, so that this sum shall go into the residuary, and pass to her husband, through herself, her sisters and brothers, or does it belong to the defendant Francesco Ricci, the surviving husband of Emma Ricci, deceased, under the will she

made, leaving him the executor and sole legatee? The testator, after giving an annuity of $500 to his sister, devised and bequeathed one-half of the residue to his executors for the use of his widow for life, and, upon her death, for division among his five children, of whom the deceased, Emma Ricci, was one, and to the lawful issue of each who may have died leaving issue. The other half of his residuary estate he left to his five children, subject to the provisions in regard to Emma Ricci and Gertrude (Mrs. Mac Gilly Cuddy). Then follows the fourth clause in the will, which is as follows:

"Fourth. I having, upon the marriage of my daughter Emma, settled upon her and her issue the sum of thirty-four thousand dollars, for which I have given to her husband, Francesco Ricci, my obligation, which is enforceable against my estate at Ringwood, New Jersey, and I having, upon the marriage of my daughter Gertrude Laura to Denis Charles Mac Gilly Cuddy, settled upon her and her issue the sum of six thousand pounds sterling, which I deem equivalent to thirty thousand dollars, which fund I have paid to trustees for her benefit, it is my will that the said sum of thirty-four thousand dollars be charged to my said daughter Emma, and that the said sum of thirty thousand dollars be charged to my daughter Gertrude Laura, on the division of my estate, as so much advanced to my said two daughters, respectively, on account of their respective shares. If their or either of their shares of the one-half of my estate directed to be divided on my decease shall not be sufficient to discharge or equalize all of said advancements, then I direct that the deficiency, with interest from the time of my decease, be charged against their shares of the property directed to be divided on the death of their mother, or against the share of the one who shall be deficient. No reclamation is to be made against my said daughter Emma or my said daughter Gertrude Laura in case her share of my estate should prove insufficient to cover said advancement, but, until respective shares reach an amount sufficient to cover the same, they are not to participate in my estate, but the whole is to be divided among my other children and their issue as before directed; and if the shares of my said two daughters exceed in value the sums so charged against them, respectively, they are to receive only the surplus necessary to make them equal with my other children, and the issue of either of them who may have died."

This will was executed by Edmund H. Miller, the father, on the 17th day of August, 1883, four years prior to his death. On the 15th day of October, 1877, nearly six years prior to the making of the will, in anticipation of the marriage about to be consummated between the daughter Emma and the defendant Francesco Ricci, of Rome, Italy, an antenuptial agreement was made between the deceased, Edmund H. Miller, his son, George M. Miller, the present plaintiff, the daughter Emma Miller, and the defendant Francesco Ricci, by which the father agreed to pay to the trustee $2,380 per annum, in equal quarter-yearly or monthly payments, for her separate use, free from the control of her husband; and to secure the payment of such sum the father acknowledged himself indebted to the trustee in the principal sum of $34,000, secured in the agreement by a mortgage deed on New Jersey real estate, with a provision that at the time of the death of Emma the principal sum should be divided among her living issue according to the laws of the state of New York in case of intestacy, unless Emma divided it differently among her issue by her will. And it was further provided that, should Emma die without leaving living issue, the principal sum should not be payable, and should revert to the father or his estate.

Emma died childless in 1897, 10 years later than the death of her father, and left by her will all her property to the defendant Francesco Ricci, her husband. All proper distribution of the estate of the father has been made, with the exception of this sum of $34,000. Did the testator intend that this principal sum should be taken out of Emma's part as an absolute advancement, or only in the contingency that he or his estate had to pay that sum under the antenuptial agreement? The theory of the parties to this litigation, with the exception of the Italian husband, defendant, is that the language of the will absolutely deducts the sum of $34,000 from the share of personalty which Emma was to receive, and that the testator had the right to consider his agreement to pay that sum even in case Emma died leaving no issue, with the burden of the income of $2,380 per year during her life, an advancement equal in value to the principal sum of $34,000, whether that principal sum ever had to be paid by him or his estate or not. There is no doubt but that it was in the power of the testator to determine for himself how he should divide his property among his five children, and whether he would make any difference as against either of his daughters who had married foreign husbands. Therefore the only question we have to solve is the inquiry as to what the real intention of the testator was. The general scheme of the testator must be effectuated, and a diversion of words made to accomplish that result. Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933. The language must be subordinated to the intention. Phillips v. Davies, 92 N. Y. 199; Colby v. Doty, 158 N. Y. 323, 53 N. E. 35. At the time he made the will, his daughter being married but a few years, the probability of her leaving children was evidently present in his mind. In that event the obligation which he had given compelled the payment of the principal sum by him or his estate at her death to those surviving children. He evidently regarded this obligation as so certain, either on account of the probability of her having issue surviving her, or because of his forgetfulness of the precise term of the antenuptial contract, that he referred to it as a settlement upon her and her issue of the sum of $34,000, for which he had given her husband, Francesco Ricci, his obligation, enforceable against his estate at Ringwood, N. J., and, in equivalent terms, refers to his daughter Gertrude Laura, saying that he had settled upon her and her issue the sum of £6,000, paid to trustees for her benefit, and directs that the sum of $34,000 be charged to Emma, and $30,000 to Gertrude Laura, on the division of his estate, as so much advanced to them, respectively, on account of their respective shares. He divides one half of his residuary estate between his five children equally, and the other half, after the death of his wife, who had the life use, in the same way; manifesting in no manner a discrimination against either of the daughters, or anywhere in the will an indication or desire that any portion of his property should go into intestacy. This very sum of $34,000 he expected to be paid before his residuary estate was reached, but to be restored, in effect, by deduction from Emma's share; and can it be said that he even remotely intended to discriminate so that Emma should lose by his will and the agreement the sum of $34,000, then have one-fifth of it restored by force of the residuary

clause in the same will, while one-fifth was added to the other daughter's share, she having received an absolute advancement, and the other three children the rest of Emma's portion to swell their shares; that he intended a reversion of the sum advanced to the advancer, the advancement failing; that he meant to deprive a daughter marrying with his consent the privilege of sharing with the others his dying bounties, because she might give her portion to a husband who may have been devoted to her and given her a happy life, when he accorded the same right to another daughter? Or exclude Emma from a share equal with the others if she survived that husband? The surrounding circumstances must be examined to ascertain the intent. Kerr v. Dougherty, 79 N. Y. 328. The construction is favored which permits participation of descendants. In re Brown, 93 N. Y. 295. It would need some unmistakable evidence of an intent to discriminate against the daughter to justify the conclusion that the provision for the advancement to her through the antenuptial agreement was intended as a discrimination to diminish her share, and enhance that of the others, in case she died childless. That contingency, at the time of the execution of the will, was not a probable one, and was evidently not so prominent a factor in the expression of testamentary intent as was the paramount declaration of equality for all of the children, only deducting from the shares which the daughters were to receive the sum which he had absolutely given to trustees for Gertrude, and the sum which he regarded as an obligation against his estate for the other daughter, Emma. In the antenuptial agreement he had given the power of appointment, and thus of discrimination between her children, to Emma; showing that he intended this principal fund to be at her disposition, only protecting her in the income for life, and providing that the principal should cease to be an obligation against his estate in case of her death childless. The contingency happened long after his will was made, which relieved his estate from any obligation, and so prevented that from being an advancement which might otherwise have been adjudged to be one, irrespective of the will. Code Civ. Proc. § 2733. He did not expect his residuary estate to be increased by relief from the antenuptial agreement. He regarded that sum as gone forever, and hence provided for its deduction from the share of the one who received it. The deduction fails because its foundation fails. It is argued that the payment of the life income to Emma was a benefit to her, and that the other children did not receive similar benefits. This is not correct, as to the daughter Gertrude, who, of course, received the benefit of the sum absolutely placed with the trustees for her; and there is no evidence but that this father provided just equalizing bounties between the other children during his life.

Let judgment be entered allowing the defendant Ricci the sum of $34,000 and interest. Judgment accordingly.