(36 Misc. Rep. 43.)

## MILLER v. COUDERT et al.

(Supreme Court, Special Term, New York County. September, 1901.)

1. WILLS—ADVANCEMENTS—PRESUMPTIONS.

A father on the marriage of his daughter made a marriage settlement, under the terms of which a trustee paid, some time before the father made his will, to such daughter, who died childless, certain sums during her life, which amounted to the interest on the principal sum named in the marriage settlement. The principal, under the settlement, was not payable to her, but was to revert to the donor or his estate if she died without lawful issue living at the time of her death. *Held* not to raise the presumption that the father intended that the amount of the principal should be deducted absolutely and in any event from her share in his residuary estate on his death.

2. SAME—CONSTRUCTION.

The will of testator provided for the distribution of his estate equally as to his children, except as it required a deduction from the shares of two of his married daughters of the principal of the marriage settlements made them by him. At the time of making the will, testator believed that such settlements were legally enforceable against him. *Held*, that the fact that one of the daughters shared in a partial division of the estate on the schedule of the executors, showing a deduction as to her of the principal as an absolute advancement, was not a consent on her part, nor on that of her sole legatee, to the theory of the executors that the principal of the marriage settlement, the interest of which alone was payable to her, was intended by the testator as an advancement to be deducted from her interest in the residuary estate.

Action by George N. Miller against Frederick R. Coudert, Jr., ancillary administrator of Francesco Ricci, and others, to construe the will of Edmund H. Miller. Judgment rendered.

On October 15, 1877, Edmund H. Miller, on the marriage of his daughter Emma with Francesco Ricci, agreed to pay the trustee $2,380 per annum for

the separate use of Emma, and to secure this payment gave the trustee a mortgage for $34,000. The agreement provided that, failing the daughter's appointment of it, the principal should be divided as in intestacy among her issue living at her death, and that, failing such issue, it should revert to the donor or his estate. In 1883 Edmund H. Miller devised to his executors one half of his residuary estate for the use of his widow for life, upon her death to be divided among his five children and the lawful issue of such as might have died leaving issue; and he left the other half to the five children, subject to the following provisions as to his daughters Emma and Gertrude Laura: "Fourth. I having, upon the marriage of my daughter Emma, settled upon her and her issue the sum of thirty-four thousand dollars, for which I have given to her husband, Francesco Ricci, my obligation, which is enforceable against my estate at Ringwood, New Jersey, and I having, upon the marriage of my daughter Gertrude Laura to Denis Charles Macgillicuddy, settled upon her and her issue the sum of six thousand pounds sterling, which I deem equivalent to thirty thousand dollars, which fund I have paid to trustees for her benefit, it is my will that the said sum of thirty-four thousand dollars be charged to my said daughter Emma, and that the said sum of thirty thousand dollars be charged to my daughter Gertrude Laura, on the division of my estate, as so much advanced to my said two daughters, respectively, on account of their respective shares. If their or either of their shares of the one-half of my estate directed to be divided on my decease shall not be sufficient to discharge or equalize all of said advancements, then I direct that the deficiency, with interest from the time of my decease, be charged against their shares of the property directed to be divided on the death of their mother, or against the share of the one who shall be deficient. No reclamation is to be made against my said daughter Emma or my said daughter Gertrude Laura in case her share of my estate should prove insufficient to cover said advancement, but until respective shares reach an amount sufficient to cover the same they are not to participate in my estate, but the whole is to be divided among my other children and their issue as before directed; and if the shares of my said two daughters exceed in value the sums so charged against them, respectively, they are to receive only the surplus necessary to make them equal with my other children and the issue of either of them who may have died." Emma died childless in 1897, and made Ricci her sole legatee, and he is now dead. The estate has been distributed, except the $34,000 above mentioned.

Julien T. Davies, for executors and trustees.

Coudert Bros. (Paul Fuller and Charles Frederic Adams, of counsel), for Coudert, administrator.

RUSSELL, J. This case was once submitted to the court mainly upon the questions of law presented by the marriage settlement agreement between the deceased testator, Edmund H. Miller, his daughter Emma Ricci and her husband, Francesco Ricci, and the will of Edmund H. Miller. The conclusions reached by the court are reported in its opinion sub nomine Miller v. Ricci, 28 Misc. Rep. 666, 59 N. Y. Supp. 1060. Leave of the court was obtained to reopen the trial before the formal decision was signed, upon the application of the executors and trustees, based upon the plea that evidence could be offered to show that the deceased daughter, Emma Ricci, had given practical construction to the theory of the executors and trustees of an absolute advancement of $34,000, by her assent to a partial division of the estate and the executors' interlocutory accounting. Evidence was taken upon such further hearing; the death of Francesco Ricci, executor and sole legatee of his deceased wife, Emma Ricci, having delayed the proceedings until the defendant Coudert was substituted as ancillary administrator of Francesco

Ricci. Upon this resubmission of the case counsel for the executors and trustees has urged with all the force with which his view may be presented the reasons why this court should come to a different determination upon the main question, because the original determination was claimed to be incorrect, and also for the purpose of a suitable foundation for the argument that Mrs. Ricci had waived her rights, even if she might without any action on her part have claimed the interests determined in her favor as heretofore announced. I have considered the additional suggestions made upon the main question, but remain of the same opinion as that I have already announced, and add but a few suggestions to those I have before stated.

It is undoubtedly true that a testator, in considering what benefits he may give to his five children, can, if he so chooses, determine that a life income shall be equivalent, in the light of an advancement, to a sum stated and fixed by him in his will, and so deduct that gross sum from her residuary share. But the income of a fund, which fund is held back by a trustee, and not paid over, is only the use of the moneys represented which the beneficiary would have in addition to the principal had the whole sum been paid over to her before the death of the testator. The deduction of a stated sum as an advancement of principal is not presumptively founded upon a mere payment of life interest. The amount named in the marriage settlement to be paid to the daughter yearly was the lawful interest upon $34,000, according to the then law of the state of New York.

Nor do I think that the daughter's interest in the residuary estate was simply one-fifth of one-half. She, living, could certainly take but one-tenth of the residuary so long as her mother lived; but on the death of that mother the trust half preserved for the use of the mother came to the five children, the period of enjoyment only being deferred. It is absolutely repugnant to the expressed idea of equality in the division of his property, both in life and after death, that this daughter should have $34,000 carved out of her estate as an advancement, which she never received and never could receive, so that if she died childless an hour after her father's death the sum of $34,000 should be taken out of her residuary interest in his estate, and then one-fifth of it should be restored later to her estate by process of undisposed of personalty dropping back into the residuary, which the testator never dreamed would be enhanced by this $34,000, because under his will he evidently regarded it as gone from that estate forever.

Nor do I deem that the agreement by which the sum of $287,000 was divided during the progress of administration, executed in July, 1888, a year after the testator's death, takes from the daughter any rights she would otherwise have. It would appear that at this period the executors evidently deemed the sum of $34,000 to have gone from the estate, just as the testator did when he made his will in 1883. They presented to her an agreement for a division of a portion of the estate, and in the schedule charged to her an advancement of $34,000 exactly as they charged to the other daughter, Mrs. Macgillicuddy, the advancement of $30,000. She had before her the

will of that father, upon which the executors rest for the basis of charging the advancement to her, in which he states as the fundamental basis of such charge of that advancement that he had upon her marriage settled upon her and her issue the sum of $34,000, for which he had given to her husband an obligation. It was not stated to be an advancement to her of income, with a return of the principal sum if she died childless; and she had the right to infer that her consent to a deduction of that sum upon a preliminary division of a portion of the property was upon the basis that she and her estate would receive the sum named, and not merely one-fifth of it. Assuming that she was entitled under the marriage settlement to regard the $34,000 fixed by the obligation of her father as so much coming to her interest in her father's estate, she did not release that right by her assent to the division named, which would not leave the executors in a position to be compelled to pay to the other children any sums mistakenly paid on account of her action. Sufficient property remained to satisfy her portion on the basis of equality of all, and refunding bonds were carefully provided for, to be given by those who shared in the distribution. A majority of the justices of the supreme court of the United States have decided in a recent case, upon this very question as to whether advancements should be absolutely charged, that the intentions of the testator, gathered from the will, construed by the circumstances surrounding him, should control, and that, even where the son gave the administrators an acknowledgment of the receipt from them of $136,035.75 by his own notes as part of his distributive share, yet, as it was a transaction between the trustees and the beneficiary, it would not be upheld in equity, and that sum should not be charged to the portion to be received by the son. Adams v. Cowen, 177 U. S. 472, 20 Sup. Ct. 668, 44 L. Ed. 851.

There is here no evidence of bad faith on the part of the executors, and they undoubtedly made their partial distribution and interlocutory accounting on the theory that the advancement of $34,000 was to be taken out of Mrs. Ricci's share, because it had already been substantially taken out of the estate, and there was no probable contingency of restoration. I therefore hold that the scheme of distribution provided for by the will for an equal division among the children should be carried out in awarding judgment herein.

Judgment accordingly.